# Adoption of Cadence.[1]

No. 11-P-721.

Plymouth. October 13, 2011. - January 24, 2012.

Present: Graham, Rubin, & Wolohojian, JJ.

*Adoption,* Dispensing with parent's consent, Visitation rights. *Parent and Child,* Dispensing with parent's consent to adoption. *Minor,* Adoption, Visitation rights. *Due Process of Law,* Adoption.

In a proceeding on a petition to dispense with parental consent to adoption, in which the father conceded his present unfitness as a parent, the Juvenile Court judge's findings that recounted the father's long-standing patterns of drug abuse, absence from the child's life, and incarceration for criminal conduct amply supported the judge's reasonable conclusion that termination of the father's parental rights was in the child's best interest [166-169]; further, given the judge's conclusion that no strong bonds had formed between the child and the father due to the father's very limited contact with her throughout her short life, the judge did not abuse her discretion in denying posttermination visitation [169].

In a proceeding on a petition to dispense with parental consent to adoption, in which the Department of Children and Families supported termination of parental rights and coguardianship of the child by two of her relatives, the judge acted within her authority under G. L. c. 119, § 26(*b*), and G. L. c. 210, § 3, and did not consider an issue not before her, in ordering an adoption plan that had not been supported by any of the parties. [169-172]

In a care and protection proceeding in which, although the Department of Children and Families supported termination of parental rights and co-guardianship of the child by two of her relatives, the judge ultimately ordered an adoption plan that had not been supported by any of the parties, the parties had proper notice that the judge was considering placement options for the child and were given an opportunity to be heard on the merits of the plan they supported, and were alerted by a statement of the judge that she did not necessarily intend to order the guardianship. [172]

In an adoption proceeding, there was not sufficient evidence to support the judge's determination that a relative of the child should act as the sole adoptive parent, where the relative testified in support of her proposed role as a coguardian but never testified that she was willing to adopt the child, and where she depended on her parents' financial support for her own needs [172-173]; however, the judge did not abuse her discretion in declining to order an additional home study focused on that relative [173-174].

---

[1]A pseudonym, as are all the names in this opinion.

PETITION filed in the Plymouth County Division of the Juvenile Court Department on November 14, 2008.

The case was heard by *Kathryn A. White*, J.

*Shelli C. Hamer* for the mother.

*Daniel R. Katz* for the father.

*Robert L. Quinan, Jr.*, Assistant Attorney General, for Department of Children & Families.

*Margaret G. Barmack* for the child.

GRAHAM, J. The parents of Cadence appeal from decrees of the Juvenile Court that, among other things, terminated their parental rights to consent to adoption, guardianship, or other custody disposition concerning their daughter Cadence. At the proceedings to adjudicate care and protection of Cadence, the Juvenile Court judge rejected the permanency plan put forward by the Department of Children and Families (department), which would have established a coguardianship by Cadence's great-uncle, Mark, and his daughter, Amanda. The judge instead ordered a plan of adoption that named Amanda as the sole adoptive parent, which none of the parties advocated at trial.

In his appeal, the father argues that the judge erred in failing to make specific and detailed findings in support of her conclusion that termination of his parental rights was in Cadence's best interests; in denying him posttermination visitation; and in ordering a plan of adoption without complying with the requirement of G. L. c. 119, § 26(*b*)(2)(i), that a home study of the potential custodian be conducted.

The mother appeals only that part of the decree ordering a plan of adoption. The mother argues that the judge lacked authority to order adoption when none of the parties put forward such a disposition; that, in considering adoption, the judge considered an issue not properly before her; that the parties were denied due process of law in the proceedings below; that the judge abused her discretion in ordering a plan of adoption based upon insufficient evidence that Amanda was willing and able to assume responsibility as Cadence's adoptive parent; and that the judge failed to comply with the requirement of G. L. c. 119, § 26(*b*)(2)(i), that a home study of the potential custodian be conducted.

The department and Cadence disagree with the father's contentions regarding the judge's termination of his rights and denial of posttermination visitation, but join the mother and father in opposing the judge's order of adoption.[2]

We vacate the plan for adoption of Cadence by Amanda and remand the case for further proceedings to determine an appropriate placement option for Cadence. In all other respects the decrees are affirmed.

1. *Procedural and factual background.* Cadence was born in October, 2008. Both Cadence's parents are habitual users of heroin and cocaine, both have been homeless, and both have extensive criminal histories. As a result of her mother's drug use, when Cadence was born she suffered from the effects of congenital drug addiction. Two weeks after Cadence's birth, the department filed a petition under G. L. c. 119, § 26, for temporary custody on the grounds that the mother and father had neglected Cadence. Cadence was placed in the custody of the department on November 14, 2008. The mother and the father waived their rights to seventy-two-hour hearings and temporary custody remained with the department. Cadence was hospitalized and then placed in a medical foster home equipped to treat Cadence's drug withdrawal.

The mother was arrested when she appeared at the seventy-two hour hearing, and incarcerated at the Dartmouth house of correction, where she attended a parenting education class, a bible study group, and an addiction support group. During her incarceration, she also obtained her GED. After the mother's release, she moved directly to Nazareth House, a transitional shelter for mothers and children. On the department's recommendation, and subject to an order prohibiting her from using drugs or having contact with the father, a judge of the Juvenile Court, who was also the trial judge, then awarded the mother temporary custody of Cadence on September 28, 2009.

In January of 2010, pursuant to an anonymous report of abuse or neglect made pursuant to G. L. c. 119, § 51A, a department social worker learned that the mother was no longer residing at Nazareth House, had been in regular contact with the father,

---

[2]The child joins only the argument that the judge abused her discretion in ordering a plan of adoption based upon insufficient evidence. Neither the department or Cadence filed a notice of appeal.

was using heroin, and had been arrested for prostitution. The department then moved for and received emergency custody of Cadence on February 3, 2010. Cadence was thereafter placed in foster care, where she remained for approximately three weeks.

Upon learning that Cadence was in foster care, the Stewart family, who are the mother's relatives, requested that she be placed in their home. After a home study of the Stewart family was conducted on February 25, 2010, Cadence was placed with them, and they have cared for her since. The Stewart family consists of parents Mark and Grace as well as their daughter Amanda. Mark works as a project director and his wife Grace works as a public school special needs teacher. Amanda has completed college and works at a daycare center, but lives at home and is financially dependent on her parents. Cadence has formed strong bonds with the Stewart family, especially Amanda, and looks to them to meet her needs.

Hearings on the merits were held on June 28 and on August 11 and 13, 2010. Under the original care and protection petition, the department sought the termination of the parents' rights and advocated coguardianship of Cadence by Mark and Amanda. The parents opposed the termination of their rights, and the father sought posttermination visitation with Cadence. The parties presented evidence on parental fitness and on the merits of the permanency plan.[3] On the latter question, Mark testified that he was willing to become Cadence's guardian, but, given his age, did not want to adopt her, and Amanda testified that she was willing to become Cadence's guardian, but did not testify that she was ready to adopt.

On September 13, 2011, the judge ordered the issuance of decrees terminating the mother's and father's parental rights. The judge also denied the father posttermination visitation, finding that visitation was not in Cadence's best interests because there were no strong emotional bonds between her and the father. Despite the fact that all parties supported coguardianship by Mark and Amanda as a placement option for Cadence, the judge rejected the coguardianship plan and instead approved

[3]At trial, the judge indicated her doubts about the merits of the coguardianship plan to the parties, saying she was "not sure [she was] on board with the guardianship."

adoption by Amanda alone, citing general concerns about the permanency and stability of guardianship arrangements.[4] Both parents appealed.

2. *Standard of review.* In recognition of the trial judge's superior position to evaluate witness credibility and weigh the evidence, we review her findings with substantial deference and will not disturb those findings unless clearly erroneous. *Adoption of Quentin*, 424 Mass. 882, 886 (1997). In addition, we defer to the judge's determinations regarding the best interests of the child, and reverse only where there is a clear error of law or abuse of discretion. See *Adoption of Hugo*, 428 Mass. 219, 225 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999).

3. *Discussion.* a. *Termination of parental rights and posttermination visitation.* Pursuant to G. L. c. 119, § 24, a person concerned about a child's welfare may file a petition in the Juvenile Court to adjudicate care and protection of that child. A petition is warranted when the child "(*a*) is without necessary and proper physical or educational care and discipline; (*b*) is growing up under conditions or circumstances damaging to the child's sound character development; (*c*) lacks proper attention of the parent, guardian with care and custody or custodian; or (*d*) has a parent, guardian or custodian who is unwilling, incompetent or unavailable to provide any such care, discipline or attention." G. L. c. 119, § 24, as amended through St. 2008, c. 176, § 84. Following emergency custody and seventy-two-hour hearings, a judge hears evidence on the merits from the petitioner and the parents regarding the parents' alleged misconduct toward the child pursuant to G. L. c. 119, § 26, as amended through St. 2008, c. 176, § 84. The Juvenile Court judge has authority under § 26(*b*) of that statute to adjudge the child to be in need of care and protection; to decide on an

---

[4]In her decision, the judge explained her disposition by saying: "[Cadence] has been in the department's temporary custody for all but five months of her two and a half years. At her tender age and in her circumstance, she is entitled to as much security as the law can afford her. Guardianship decrees, by their very nature, are not necessarily permanent. They are subject to attack, post-issuance litigation and reconsideration. Ultimately, such decrees do not create a permanent relationship between the guardian and the ward: the decree expires when the ward reaches eighteen."

appropriate placement option for the child; and, if necessary, pursuant to c. 119, § 26(*b*)(4), terminate the parents' rights to receive notice of or give consent to an adoption, guardianship, or other custody disposition concerning the child in accordance with G. L. c. 210, § 3.

When deciding whether to terminate a parent's rights, the judge should evaluate whether the parent is "able to assume the duties and responsibilities required of a parent and whether dispensing with the need for parental consent will be in the best interests of the child[]." *Adoption of Mary*, 414 Mass. 705, 710 (1993). "Because the termination of parental rights is an 'extreme step,' . . . [a] judge [must] articulate specific and detailed findings in support of a conclusion that termination is appropriate, demonstrating that she has given the evidence close attention." *Adoption of Nancy*, 443 Mass. 512, 514-515 (2005), quoting from *Adoption of Frederick*, 405 Mass. 1, 5 (1989).

Before terminating the parents' rights, the judge must engage in a two-part analysis. *Adoption of Nancy*, 443 Mass. at 515. First, the judge must find that the parent is presently unfit. See *Adoption of Paula*, 420 Mass. 716, 731 (1995). In cases where the judge seeks to dispense with parental consent to adoption, the judge is required to consider the factors enumerated in G. L. c. 210, § 3, in assessing parental unfitness. Current parental unfitness must be proved by clear and convincing evidence, see *Care & Protection of Laura*, 414 Mass. 788, 790-791 (1993), though the judge's subsidiary findings in support of this determination under c. 210, § 3, need only be proved by a fair preponderance of the evidence. *Id.* at 794.

Second, the judge must find that "it would be in the child's best interests to end all legal relations between parent and child." *Adoption of Nancy*, *supra* at 515. That determination includes consideration of the permanency plan proposed by the department and the parent. *Adoption of Vito*, 431 Mass. 550, 568 n.28 (2000). *Adoption of Dora*, 52 Mass. App. Ct. 472 (2001). The plan may include posttermination or postadoption visitation orders between the parent and child. *Adoption of Vito*, 431 Mass. at 568. In cases where an adoptive family is available and postadoption visitation is sought, "[a] judge should issue an order of visitation only if such an order, on balance, is necessary

to protect the child's best interest." *Adoption of Ilona*, 459 Mass. 53, 65 (2011). The judge may properly decline to order visitation when the adoptive parent's discretion to make decisions regarding contact will adequately serve the child's best interests. See *id.* at 64-65. In such a case, an order mandating postadoption visitation requires both a conclusion that visitation would be in the child's best interests and that those interests will not be adequately served by the adoptive parent's discretion. See *ibid.* In cases where there is no adoptive family available and posttermination visitation is sought, the judge may exercise his or her discretion to order posttermination visitation when it would serve the best interests of the child. See *Adoption of Helen*, 429 Mass. 856, 862-863 (1999).

(i) *Termination of the father's parental rights: unfitness.* The father contests the termination of his parental rights. While he concedes that he is presently unfit as a parent, he argues that the judge's findings are insufficiently specific and detailed to support her determination that termination of his parental rights is in Cadence's best interests. In support of this argument, he points to evidence presented at trial indicating that he has provided basic necessities for Cadence in the past and is willing to assume responsibility for her in the future. We are not persuaded.

In deciding whether termination of parental rights will serve the child's best interests, "[t]he inquiry . . . is not whether the parent is a good one, let alone an ideal one; rather, the inquiry is whether the parent is so bad as to place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 761 (1998). In other words, the judge must find "grievous shortcomings" to justify terminating parental rights. *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28 (1997), quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 646 (1975).

The judge's findings of fact recount the father's history of drug abuse with specificity, show his consistent absence from Cadence's life, and describe his extensive history of criminal conduct. These patterns of behavior would place Cadence "at serious risk of peril" from neglect by father were she returned to his custody. *Care & Protection of Bruce, supra* at 761. These

findings are amply specific and detailed to support the judge's determination that termination of the father's rights is in Cadence's best interests. See *Adoption of Nancy*, 443 Mass. at 514-515.

Moreover, the judge is not required to grant the father an indefinite opportunity for reform. *Id.* at 517 ("it is only fair to the child to say, at some point, 'enough' "). Where there is evidence that a parent's unfitness is not temporary, the judge may properly determine that the child's welfare would be best served by ending all legal relations between parent and child. *Adoption of Ilona*, 459 Mass. at 59-60.

Here, given the father's long-standing patterns of drug abuse, absence from Cadence's life, and incarceration for criminal conduct, the judge reasonably concluded that his unfitness would continue into the future, and therefore would support the termination of his rights as being in Cadence's best interests. See *ibid.* These conclusions are amply supported despite the father's having provided necessities for Cadence in the past and despite his stated willingness to assume responsibility for Cadence.

(ii) *Posttermination visitation.* Because there were no strong emotional bonds between Cadence and the father, the judge concluded that ordering posttermination visitation with father was not in Cadence's best interests. The father argues, however, that the judge abused her discretion in denying him posttermination visitation with Cadence. He contends that, because he has provided basic care for Cadence in the past, and there is uncertainty regarding Amanda's willingness to adopt Cadence, posttermination visitation was necessary to protect Cadence's best interests. We disagree.

The father's contentions, though in part accurate, do not address the judge's rationale for declining to order posttermination visitation. Having reviewed the record, we are satisfied that the judge was entitled to conclude that no strong bonds have formed between Cadence and the father because he has had very limited contact with her throughout her short life. We therefore see no grounds on which to upend the judge's conclusion that a visitation order is not in Cadence's best interests. See *Adoption of Helen*, 429 Mass. at 863.

b. *Authority to consider and approve adoption.* Having deter-

mined that a child is in need of care and protection, the judge has broad authority to order any disposition regarding placement consistent with the best interests of the child. See G. L. c. 119, § 26(*b*). The judge may order that the child remain with his or her parents or, where appropriate, approve a guardianship or adoption plan. The parties often present competing placement plans, and the judge may then decide which, if any, among them serves the child's best interests. See, e.g., *Adoption of Hugo*, 428 Mass. at 225-226; *Adoption of Dora*, 52 Mass. App. Ct. 472, 475 (2001).

(i) *Authority to approve plan not presented by parties.* The mother contends that the judge lacked the authority to approve adoption by Amanda alone when none of the parties supported such a disposition.[5] The mother also argues that, while the issue of placement was properly before the judge, nevertheless the judge considered an issue not before her in considering adoption when the parties supported guardianship. We disagree with both contentions.

Regarding the first contention, G. L. c. 119, § 26(*b*), allows the judge, having determined that a child is in need of care and protection, to commit that child to the department's custody. It further allows the judge to "make any other appropriate order . . . about the care and custody of the child as may be in the child's best interest." In making such an order, the judge may, among other options, "transfer temporary or permanent legal custody" to "any person . . . qualified to give care to the child." *Ibid.*

In making a determination regarding placement under c. 119, § 26(*b*), and if termination of parental rights is at issue in accordance with G. L. c. 210, § 3, the judge is required to consider and meaningfully evaluate plans put forward by the department and by the parents. See *Adoption of Dora*, 52 Mass. App. Ct. at 475. The judge may then accept or reject either plan after a "careful evaluation of [its] suitability." *Id.* at 475, quoting from *Adoption of Lars*, 46 Mass. App. Ct. 30, 31 (1998), *S.C.*, 431 Mass. 1106 (2000). It does not suffice for the judge merely to issue a broad dispositional order committing the child to the

---

[5]Despite statements to the contrary in its brief, the department endorsed a similar position at oral argument.

department's custody. See *Care & Protection of Three Minors*, 392 Mass. 704, 714 (1984). Moreover, where the judge lacks sufficient information to determine what plan serves the child's best interests, it is not appropriate for the judge "to leave the choice of adoptive placement to the discretion of [the department] subject only to review by the adoption judge under G. L. c. 210, § 6." *Adoption of Dora, supra* at 476.

Nevertheless, neither c. 119, § 26(*b*) or c. 210, § 3, require that the petitioner, or any other party, have proposed or supported the judge's ultimate custody order. See *Adoption of Dora*, 52 Mass. App. Ct. at 476. See also *Adoption of Hugo*, 44 Mass. App. Ct. 863, 866 (1998), *S.C.*, 428 Mass. 219, cert. denied sub nom. *Hugo P. v. George P.*, 526 U.S. 1034 (1999) ("The authority to order an alternate plan is implicit in the authority to approve or disapprove a plan in accordance with the evidence presented"). Even if the judge rejects all the plans presented, he or she nevertheless has residual authority under c. 119, § 26(*b*), and c. 210, § 3, to order an alternative disposition, provided it is consistent with the best interests of the child. Thus, even though the parties supported coguardianship by Mark and Amanda, the judge had the authority under c. 119, § 26(*b*), and c. 210, § 3, to order that Cadence be adopted by Amanda alone.[6]

Regarding the second contention, that the issue of adoption was not properly before the judge, in *Care & Protection of Three Minors*, 392 Mass. at 714, the Supreme Judicial Court made clear that, in care and protection cases, the judge should always address the available placement options for the child. It is true that in many placement decisions, the judge only considers one form of granting custody, often adoption. See, e.g., *Adoption of Hugo*, 428 Mass. at 225-226; *Adoption of Dora, supra* at 473-474. Nevertheless, in considering placement options, the question before the judge is ultimately: What plan serves the child's best interests? See *Care & Protection of Three Minors, supra* at 714; *Adoption of Dora*, 52 Mass. App.

---

[6]Our conclusion on this point does not necessitate that the judge's exercise of this authority is always proper. The judge's placement order must be supported by sufficient evidence that the placement option serves the best interests of the child. See part 3.b(iii), *infra*.

Ct. at 475. In answering a question, the judge may confront, as in the circumstances here, a choice between guardianship and adoption. Thus, the fact that the judge approved adoption when the parties supported guardianship does not entail that she considered an issue not before her.

(ii) *Due process claim.* The mother argues that the parties were denied due process of law because the parties lacked notice of the judge's intended placement disposition. She contends that the judge did not alert the parties that she might reject the coguardianship plan or consider alternative placements for Cadence.[7] We disagree.

The fundamental requirements of due process, applicable in care and protection proceedings, are notice and an opportunity to be heard. See *Care & Protection of Manuel,* 428 Mass. 527, 535 (1998). In a care and protection case, a denial of due process occurs when the judge rules on an issue, such as parental unfitness, without first providing the affected parties with notice and an opportunity to be heard on that issue. See *ibid.* See also *Adoption of Zev,* 73 Mass. App. Ct. 905, 905-906 (2009). When the judge is considering various placement options for the child, due process requires that the parties be afforded notice and an opportunity to be heard on the question of the best placement option for the child. See *Care & Protection of Manuel, supra.*

The parties all had proper notice that the judge was considering placement options for Cadence and were given an opportunity to be heard on the merits of the coguardianship plan they mutually supported. Additionally, in the course of the proceedings, the judge advised the parties that she was unconvinced of the merits of the coguardianship plan, saying she was "not sure [she was] on board with the guardianship." This statement served to alert the parties that the judge did not necessarily intend to grant the coguardianship, and may have been considering other placement options for Cadence. Thus, the parties were not denied due process.

(iii) *Abuse of discretion in ordering adoption.* The mother (and the department and Cadence) argues that the judge abused her discretion in ordering adoption by Amanda alone when

---

[7]Although the department is an appellee in this matter, it makes a similar argument in its brief.

there was insufficient evidence that Amanda was willing and able to adopt Cadence. We agree.

In deciding whether a particular placement option serves the child's best interests, the judge must have sufficient evidence to make an appropriate determination. See *Adoption of Dora*, 52 Mass. App. Ct. at 475-476. To conclude that adoption by a particular person is in the child's best interests, the judge must have evidence that the person is actually willing and able to adopt the child.

Here, Amanda never testified that she was willing to adopt Cadence. While she did testify that she wanted to act as Cadence's mother, that testimony was presented in support of the petition for coguardianship and was grounded on the assumption that Mark, too, would act as Cadence's guardian. In addition, the fact that Amanda depends on her parents' financial support strongly suggests that she would be unable to provide for Cadence's needs on her own. Therefore, because there was insufficient evidence that Amanda was willing and able to adopt Cadence, the judge abused her discretion in ordering that Amanda serve as Cadence's sole adoptive parent.

(iv) *Home study requirement.* Lastly, the parents and Cadence argue that the judge abused her discretion in failing to order an additional home study focused on Amanda before approving adoption by her alone. We disagree, but note that the home study did not provide the judge with sufficient information regarding Amanda's suitability as an adoptive parent.

Before making a custody award in a care and protection case, a home study of the potential custodian must be conducted. See G. L. c. 119, § 26(*b*)(2)(i). See *Adoption of Irene*, 54 Mass. App. Ct. 613, 620-621 (2002). The purpose of the home study is to guide the judge's decision regarding whether the placement candidate is "qualified to give care to the child." G. L. c. 119, § 26(*b*)(2)(i).

The judge did not abuse her discretion in failing to order an additional home study focused on Amanda because the initial home study that looked at all the members of the Stewart family satisfied the statutory requirement. See G. L. c. 119, § 26(*b*)(2)(i). The initial home study, however, failed to provide the judge with sufficient information to permit her to conclude that Amanda was

a suitable adoptive mother. Moreover, there is no other evidence in the record from which we can conclude that the judge was provided adequate evidence of Amanda's suitability and willingness to serve as an adoptive parent before she approved a plan of adoption of the child by Amanda.[8]

4. *Conclusion.* We conclude that the judge acted within the scope of her authority under G. L. c. 119, § 26(*b*), and G. L. c. 210, § 3, in ordering a disposition different from that supported by the parties; that she did not consider an issue not properly before her; that the parties were not denied due process in these proceedings; and that the judge did not abuse her discretion in declining to order an additional home study. But because there was insufficient evidence that Amanda was willing and able to adopt Cadence, we conclude that the judge abused her discretion in ordering adoption by Amanda alone. Accordingly, we vacate that part of the decree approving adoption by Amanda and remand the case for further proceedings not inconsistent with this opinion to determine an appropriate placement option for Cadence. In all other respects the decrees are affirmed.

*So ordered.*

---

[8]On remand, the judge may determine whether a new home study is necessary for her to determine whether adoption by Amanda is in the child's best interests or whether the pertinent information may be obtained in some way other than a home study.