After trial, a judge of the Juvenile Court found the mother unfit to parent three of her children, Zevon, Michael, and Susan (collectively, the children),[3] terminated her parental rights, and approved the adoption plan of the Department of Children and Families (department), pursuant to G. L. c. 210, § 3. On appeal, the mother claims that the trial judge erred in terminating her parental rights without clear and convincing evidence of current unfitness.[4] Additionally, she claims that the trial judge erred in declining to order posttermination visitation. We find no such errors and therefore affirm.
Background. This case arose out of a care and protection petition filed by the department pursuant to G. L. c. 119, § 24, in January, 2013. The previous day, twin boys Zevon and Michael, who were less than two years old, appeared at day care with fresh bruises and cuts on their faces and other areas of their bodies. The twins and their eight month old sister, Susan, were removed from the home and placed in the department's custody. By that time, the family had been the subject of a number of reports pursuant to G. L. c. 119, § 51A, alleging domestic violence between the mother and the father,[5] as well as abuse and neglect of the children.[6]
In the first few months following the removal of the children, the mother acknowledged that she needed to distance herself from the father, required help with managing the children, and needed to work on anger issues. After the mother began seeking treatment for her issues and indicated to the department that her relationship with the father was over, the children were returned to the mother in May, 2013. Less than two weeks later, a department social worker paid an unannounced visit to the mother's home. In Susan's room, the social worker found a strong odor of marijuana. The father emerged from the bedroom closet, intoxicated. In addition, the mother's friend, a registered sex offender who reportedly cared for the children, was present. The father threatened to harm the social worker's newborn child. The children were again removed.
By August, 2013, the mother refused to even discuss service plans with the department; the goal for the children was changed from reunification to adoption. In September, 2013, the mother moved into a Connecticut apartment with another man, Calvin (a pseudonym), whom she described as a gang member. In December, 2013, the mother and Calvin were arrested together after a domestic violence incident; the police recovered a gun from the home. Prior to this arrest, a posting to Facebook showed the mother posing with a gun, which she was not licensed to carry. In a later telephone conversation, the mother threatened a department social worker that Calvin would cause bodily harm to her if the children were not returned.
Although the mother refused to sign any service plans, missed numerous scheduled therapy sessions, and failed to keep the department apprised of her relationships and living situations, she did visit the children. She brought several different men with her to the visits, which were chaotic. The children had difficulty connecting or engaging with the mother, playing with toys and not making eye contact, or crying and clutching a department social worker.
By the time of the commencement of trial in May, 2014,[7] the children had been with the same foster parents for a year. Although the twins initially showed signs of significant trauma, they improved over time. After visits with their mother, however, the boys showed signs of regression. They, as well as Susan, developed a secure attachment to the foster parents.
At the conclusion of trial, the judge found that the mother was unfit and that termination of her parental rights was in the children's best interests. The judge approved the department's permanency plan of adoption by the foster parents and declined to order posttermination visitation.
1. Parental unfitness. In order to dispense with consent to adoption, the judge must first find, "by clear and convincing evidence, that a parent is presently unfit to provide for the welfare and best interests of the child." Adoption of Mary, 414 Mass. 705, 710 (1993). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Id. at 711. If the parent is deemed unfit, the judge must then "determine whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011).
"Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Id. at 60. A "faint hope" that the parent will become fit at some point in the future, without more, is insufficient to meet the standard. Ibid. In making this decision, the judge may properly take into account "prognostic evidence derived from an ongoing pattern of parental neglect or misconduct." Custody of a Minor (No. 1), 377 Mass. 876, 883 (1979).
The mother contends that the judge found her to be unfit primarily due to issues of her "tumultuous relationships with men who had violent tendencies" and her mental health. She argues that the judge erroneously concluded that she would continue to struggle with these issues in the future. She claims that this was error, because the evidence established that her last troublesome relationship ended well before trial and that she was actively engaged in mental health services at the time of trial. We review the judge's determination of parental unfitness for abuse of discretion or error of law. See Adoption of Ilona, 459 Mass. at 59.
(a) The mother's relationships. The department filed the underlying petition in January, 2013. By that time, the mother had already participated in several programs designed to help her avoid abusive relationships, dating back to 2011, in connection with prior involvement with the department. Still, the mother continued her abusive relationship with the father. Even after the violence caused physical harm to the oldest child and to Susan, the mother wanted the father to be involved with the children. Although she maintained an active restraining order against the father and told the department that the relationship was over, the mother continued to be involved with him.
The mother's relationship with the father did not end until late 2013 or early 2014, within a few months of trial. Additionally, in late 2013, the mother became involved with and moved in with Calvin, a gang member. Only months before trial, in December, 2013, the police were called to their home to respond to a domestic violence incident between them. During the course of the trial proceedings, the mother continued to bring different questionable men with her to visit the children and refused to allow the department to investigate these relationships.
Under the circumstances, the judge was warranted in concluding that the mother had failed to learn from her domestic violence education programs and that she would likely continue to endanger her children through these relationships. See Adoption of Larry, 434 Mass. 456, 469 (2001) (trial judge properly considered past parental conduct as relevant to issue of current parental fitness where that conduct was not too remote, especially where evidence supported continuing vitality of such conduct). There was no error.
(b) The mother's mental health. In the first few months following removal of the children, the mother engaged in mental health services. Thereafter, however, the mother missed so many scheduled therapy sessions that she was terminated as a client of the counselling center. Although the mother claimed that she was continuing to receive treatment elsewhere, she could give no details so as to corroborate this claim. In any event, any treatment the mother engaged in did not improve her parenting. See Adoption of Paula, 420 Mass. 716, 730 (1995) (absent evidence that services have resulted in improved parenting, mere participation in services cannot support finding of future fitness).
The mother continued to associate with people who were likely to bring danger to the children, including a registered sex offender and a gang member. When the children appeared with unexplained serious injuries, the mother claimed that the children beat each other up. She refused to cooperate with the department and even made threats of bodily harm to the staff. This behavior continued up to the time of trial. Under the circumstances, the judge was warranted in concluding that the mother's behavior that endangered the children was not likely to resolve in the near term. See Adoption of Ilona, 459 Mass. at 59-60 ; Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012).
2. Posttermination visitation. The decision to grant visitation to a parent whose parental rights have been terminated rests within the sound discretion of the judge. See Adoption of Rico, 453 Mass. 749, 756 (2009). Any visitation ordered must be to promote the best interests of the child. See Adoption of Vito, 431 Mass. 550, 564 (2000). In making this determination, the judge should consider the bond between the biological parent and the child. Adoption of Greta, 431 Mass. 577, 588 (2000) (posttermination visitation may be warranted where evidence points to significant, existing bond between child and biological parent, such that abrupt severance of that bond would be harmful to child).
After reviewing the entire record evidence, the judge concluded that there was "no credible evidence of a significant relationship or bond" between the children and the mother. Citing to early reports of her visits with the children, the mother asserts that the children were bonded to her. To the contrary, the judge found that the children were harmed in their developmental progress after visits with the mother. Michael would engage in dangerous behavior, such as climbing to high places and getting stuck; he also regressed in toilet training. He began constantly asking his foster parents whether he was going to be able to stay with them. Zevon became more aggressive and fearful and engaged in prolonged tantrums, throwing himself against walls. Susan began to sleep less than three hours per night, said she was scared, and became rigid. Given these findings, there was no abuse of discretion in the judge's decision to refrain from ordering posttermination visitation.
Decrees affirmed.

The mother's oldest child resides with his father (who is not the father of the children at issue here) and was not the subject of the petition underlying this appeal.

The father of Zevon, Michael, and Susan voluntarily surrendered his parental rights in November, 2013, and is not a party to this appeal.

All references to "the father" are to the father of Zevon, Michael, and Susan.

In March, 2011, there were allegations of domestic violence between the mother and father. In June, 2011, the department filed a petition for care and protection and removed the twins and the oldest child. Subsequently, the mother engaged in therapy and domestic violence education classes. The twins and the oldest child were returned to the mother eight months later in February, 2012, and the case was dismissed. Later that year, in September, 2012, there was another incident of domestic violence where the father shoved the mother to the floor and the oldest child into a washing machine, hitting his head. In October, 2012, there were allegations that the parents left the children alone for several hours and that, during a fight between the parents, glass was broken, injuring Susan. In December, 2012, there were further reports that the children had unexplained bumps, bruises, and scratches, had diarrhea as a result of consuming another child's medication, were left in dirty diapers all day, and were given alcohol by the mother in order to quiet them.

The trial initially took place on four days between May and September, 2014. The evidence was reopened in February, 2015, and the judge issued his findings and rulings in May, 2015. By that time, the children had been with the same foster parents for two years.