Both the mother and the father appeal the termination of their parental rights with respect to the child. We consider the arguments of each parent in turn and affirm.
Background. The child was born in July, 2011. In March, 2013, when the child was twenty months old, the Department of Children and Families (department) filed a care and protection petition after investigating a report filed pursuant to G. L. c. 119, § 51A (51A report), and the child was removed from the mother's custody.[3] The child has lived in a preadoptive home since September, 2014, and was almost five years old when trial concluded in 2016.
Discussion. 1. The mother's arguments. a. Current unfitness. The mother argues that the department failed to prove her current unfitness by clear and convincing evidence. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).[4]
As an initial matter, the mother argues that the judge erroneously relied on evidence of prior acts related to three older children who were not parties to the petition. Assuming without deciding that this evidence was improper,[5] there was nonetheless clear and convincing evidence supporting the finding that the mother was currently unfit to care for this child based on her substance abuse, criminal history, domestic violence, and lack of stable housing.
There was ample evidence in the record of the mother's struggle with substance use. The mother contends that the judge relied on a stale history of her substance abuse, failed to give appropriate weight to her positive gains, and impermissibly considered the substance of a 2016 51A report alleging that the she used heroin.[6] Despite evidence about her recent sobriety, the mother tested positive for drugs over forty times during the pendency of the department's involvement with this child and, on other occasions, refused to provide drug screens in violation of her service plan. Furthermore, there was a concern that the mother tampered with urine tests, and that she was not honest about her sobriety. The judge also considered the mother's ongoing criminal activity, including twenty-three criminal charges and periods of incarceration after the child's removal from the mother's care, which the mother concedes was linked to her substance abuse. The judge permissibly considered the history of substance use and its impact on the child. See Adoption of Serge, 52 Mass. App. Ct. 1, 7 (2001).
The mother also claims error in the judge's consideration of the history of domestic violence with the father. Although the mother completed two domestic violence programs, she continued to "protect Father and mitigate, or outright deny, the occurrence of domestic violence." The evidence of domestic violence was relevant where the mother told the court clinician that she might consider a future relationship with the father and stated that she would meet any future violence with violence, and where she failed to recognize the danger of domestic violence to herself and the child. See Adoption of Ramon, 41 Mass. App. Ct. 709, 718 (1996) (parents with long and documented history of domestic violence were not merely temporarily unfit).
Additionally, the judge permissibly considered the mother's housing instability as one factor of her unfitness. See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 136 (2004) (pattern of housing instability was relevant to fitness).
We are satisfied that the judge adequately assessed the evidence, including the evidence favorable to the mother, and that he did not abuse his discretion in finding the mother unfit based on a combination of factors. Although the mother disputes the judge's weighing of the evidence and credibility determinations, "[w]e see no basis for disturbing the judge's view of the evidence." Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).
b. Termination of the mother's parental rights. The mother further argues that the judge's conclusions of law supporting the termination of her parental rights were flawed. "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
The judge issued 196 factual findings and forty-one conclusions of law in this case. "[T]he judge's factual findings were specific and detailed, demonstrating that close attention was paid to the evidence and the fourteen factors listed in G. L. c. 210, § 3(c )." Adoption of Nancy, 443 Mass. 512, 516 (2005). The judge adequately concluded that factors ii, iii, iv, vi, vii, viii, ix, x, and xii were applicable. It is clear that the judge's determination was based "on a constellation of factors that pointed to termination as being in the best interests of the child," and is supported by ample evidence. Adoption of Greta, 431 Mass. 577, 588 (2000).
2. The father's arguments. The father argues that several alleged trial errors were prejudicial and that there was not clear and convincing evidence of his unfitness. We disagree.
There was clear and convincing evidence of the father's unfitness and grounds for termination of his parental rights based on his aggressive behavior, criminal history, inability to maintain stable housing, and inability to comply with the service plan. The judge made specific findings regarding domestic violence, the father's aggressive behaviors, and the impact of those behaviors on the child.
Although the father contends that certain hearsay statements regarding domestic violence were improperly considered, the father testified at trial and acknowledged domestic violence in his relationship with the mother, while also minimizing the level of violence and justifying it. The father failed to benefit from services and continued to demonstrate aggressive behaviors, even threatening an individual who accompanied the mother to court on the first day of trial. The judge characterized the father's history of domestic violence and his aggressive and violent nature as grievous shortcomings that affected the child's emotional and physical well-being. In one instance, the father directed his aggression at a department social worker while the social worker was holding the child, and the child was upset from the incident. The judge also credited the preadoptive parent's testimony that the child was anxious and aggressive surrounding visits with each parent. We defer to the judge's credibility assessments and the weight that he placed on both the father's participation in services related to domestic violence and the impact of the father's actions on the child. See Adoption of Quentin, 424 Mass. at 886 n.3.
Additionally, the father has an extensive criminal history, including having been arraigned on eighty-five criminal charges and serving periods of incarceration during the pendency of the department's involvement with the child. Accordingly, the judge concluded that the father's continued criminal involvement would place the child at risk. See Adoption of Cadence, 81 Mass. App. Ct. 162, 168-169 (2012).
The father also contends that the court clinician provided impermissible hearsay testimony that suggested that the father was not truthful about his engagement in services. Assuming without deciding that the clinician's testimony about what collaterals told her was improper,[7] it was not prejudicial. The disputed testimony concerned the father's housing status, his participation as a cofacilitator of one particular program, and his attendance at therapy. The testimony was referenced in only one factual finding. The testimony did not impermissibly bolster the evidence of the father's unfitness where the father, consistent with the clinician's testimony, also testified that he lacked stable housing.[8] Similarly, testimony about the father's participation in one program was not prejudicial. The clinician testified that the father led her to believe that he was trained to cofacilitate the program, while he testified that he intended to become a cofacilitator. Regardless, the judge thoroughly reviewed the father's engagement in multiple programs, crediting the father's testimony that he completed certain programs as required by the service plan but also finding that the father failed to complete others. The judge closely considered the father's engagement with services.
Finally, the father argues that the judge abused his discretion in allowing expert testimony about the child's bond with the preadoptive parent. Even assuming, without deciding, that the testimony was inadmissible, there was no prejudice. The father conceded at trial that the child had "a very, very close bond now with the [preadoptive] mother" and that the preadoptive mother knew things about the child that he does not. See Adoption of Serge, 52 Mass. App. Ct. at 9.
The judge did not err in concluding that clear and convincing evidence established the father's unfitness and that the child's best interests would be served by terminating the father's parental rights.[9]
Decrees affirmed.

The record indicates that the child only ever lived with the father "for a few months while he was living with Mother."

We pause to note that the mother and father have shown evident affection toward the child, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother and father do not love the child. The inquiry instead is whether the parents' deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).

The mother's parental rights to the older children were previously terminated. The judge in this case made 196 factual findings and forty-one conclusions of law, and the mother challenges only eight findings of fact and two conclusions of law referencing the older children.

The mother argues that the judge specifically considered this 51A report to conclude that she "relapsed at least twice since [the child] was removed from her custody." However, the judge does not indicate that this conclusion was based on the 51A report, and there was other evidence of the mother's drug use in the record.

The father cites to portions of the trial transcript where the clinician testified to information from both the father and from collaterals. To the extent that the father contends that the clinician impermissibly testified about the father's own statements to the clinician, the father's statements are admissible against him. See Care & Protection of Sophie, 449 Mass. 100, 105-106 (2007).

The judge was not required to place undue weight on the father's testimony that he moved into an apartment by the end of trial. See Care & Protection of Lillith, 61 Mass. App. Ct. at 136.

To the extent that we do not address the mother's or the father's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).