The mother appeals from a decree finding her unfit to parent Marco and terminating her parental rights and dispensing with the need for her consent to his adoption.[2] Marco's father pursues a similar appeal.[3] We affirm.
Background. The trial took place over the course of fifteen days between May and October of 2016. After reviewing sixty-six exhibits and the testimony of twenty-two witnesses, a Juvenile Court judge made 223 findings of fact and twenty conclusions of law that were "both specific and detailed, demonstrating, as we require, that close attention was given to the evidence." Adoption of Don, 435 Mass. 158, 165 (2001). We summarize her findings.
The mother and father were born in Uganda. Sarah was born in Uganda in July, 2002; the mother moved to the United States after Sarah was born, leaving her in the care of relatives in Uganda. Amy was born in Boston in September, 2005. When Amy was two months old, the mother took her to Uganda and returned to the United States alone, leaving Sarah and Amy (the girls) in the care of relatives. The father moved to the United States in 2010. The mother and father have been in a relationship since 2011. They live together, but are not married. In March, 2012, the girls came to the United States to live with the mother and father. Marco was born in January, 2013.[4]
The girls' life with the mother and father was marked by frequent and severe physical and emotional abuse. We need not recount the judge's extensive findings detailing the abuse, as the mother does not challenge the conclusion that she is currently unfit to parent the girls, and that termination of her parental rights is in the girls' best interests. It suffices to note that on June 6, 2014, the Department of Children and Families (department) became involved after a mandated reporter at Sarah's school observed marks and welts on Sarah's body. Sarah disclosed that the father had shaved her head as punishment and that he had hit her and Amy with a plunger stick and belt. During the investigation that immediately followed this disclosure, both parents acknowledged using physical discipline on the girls. The father admitted that he had struck Sarah five times the previous night. He did not appear remorseful and showed no emotion while discussing his actions. The father was arrested for striking the girls, and all three children were removed from the home the same day.
Both girls showed signs of trauma after they were removed. They did not want to visit the parents, and Sarah expressed particular concern for Marco's safety should he be returned to the parents' custody.[5] She disclosed that Marco was exposed to violence in the home.[6] According to Sarah, Marco would clap and smile while the father hit the girls. Although the father denied hitting Marco, Sarah recounted an occasion when the father whipped Marco's body with a wet, rolled handkerchief. Sarah observed bruises on Marco's legs and bottom while she was bathing him later that night. Six months after he was removed, a department social worker observed horizontal marks on Marco's back that appeared darker than the rest of his skin.
Sarah, then age eleven, was Marco's primary caretaker while the mother worked and the father watched television, talked on the telephone, or slept. Although Sarah was forced to prepare fresh meals for the parents, the children were required to eat spoiled food that caused Marco to get sick. Several times, Sarah returned home from school to discover Marco home alone. On one occasion, Marco was by himself as food cooked on the stove. The father told Sarah that he would hit Marco if Marco misbehaved like the girls.
Both parents characterized the physical abuse as normal discipline in Uganda. Neither has taken responsibility for abusing the girls. The mother stated that the father " 'has been a good father' to her children," and she declined to separate from him despite the girls' fear for their own safety and the safety of Marco.[7] Although both parents have engaged in services, the department has not recommended reunification because the parents do not understand the impact of the abuse on the children. Indeed, the parents contend that the girls are lying about the extent of the abuse.
In January, 2016, the parents were indicted for abusing the children, including Marco.[8] Consequently, the parents did not testify at the trial in Juvenile Court, asserting their Fifth Amendment to the United States Constitution privilege against self-incrimination. The judge drew a negative inference from the parents' failure to answer several questions relating to the abuse.
After considering the factors set forth at G. L. c. 210, § 3 (c ), the judge concluded that the parents are unfit. She found that both parents had physically abused the girls and that the father emotionally abused the girls, physically abused Marco on one occasion, and neglected Marco by leaving him home alone, allowing him to witness abuse of the girls, and giving him spoiled food. The judge also found that although the mother knew of the father's abuse of the children, she "failed to protect the children and failed to intervene. She refused to separate from Father [in spite of being told by the department that staying with him would hurt her ability to regain custody of the children] and has denied and minimized the reports of abuse and neglect." The judge also concluded that the parents do not understand the negative impact of abuse on children, and that their "continued denial of the abuse and their inability to acknowledge the impact of the abuse on the children ... demonstrates that the children remain at risk of abuse if returned to the parents." The judge approved the department's adoption plan for Marco.
Discussion. The mother claims that the judge's findings regarding Marco are based solely on evidence regarding the girls, and that there is no nexus between the mother's conduct with the girls and her current ability to parent Marco. The father claims that the judge's findings of his abuse and neglect of Marco are clearly erroneous and that, in any event, they do not establish the father's current unfitness by clear and convincing evidence. We disagree.
"In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011). "[T]he critical question is whether the natural parents are currently fit to further the welfare and best interests of the child." Bezio v. Patenaude, 381 Mass. 563, 576 (1980). "We give substantial deference to a judge's decision ... and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra.
Here, the mother's history of parenting the girls had prognostic value that the judge was entitled to consider when deciding her fitness to parent Marco. Adoption of George, 27 Mass. App. Ct. 265, 268 (1989). The judge properly relied on both parents' "prior patterns of ongoing, repeated, serious parental neglect, abuse, and misconduct in determining" their current fitness to parent Marco. Adoption of Diane, 400 Mass. 196, 204 (1987). There was evidence that the mother repeatedly acquiesced in the father's physical and emotional abuse of the girls, and of his physical abuse and neglect of Marco. In these circumstances, the judge was not required to return Marco to the parents and risk injury to him before concluding that the parents are unfit and that termination of their rights is in Marco's best interests. Adoption of Inez, 428 Mass. 717, 721 (1999).
The judge's findings that the father abused and neglected Marco are based on Sarah's testimony, which the judge explicitly credited. We discern no clear error in those findings. They were corroborated, in part, by evidence of Marco's significant developmental delays in communication and social skills.
"Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). Mindful of this standard, we agree that there was clear and convincing evidence of the parents' unfitness that would put Marco's welfare in jeopardy if he was returned to their care. It is clear from the record that they (1) lack insight into the impact that the severe abuse has had on the girls, and (2) have not recognized or taken responsibility for the danger such abuse would pose to Marco. See Care & Protection of Three Minors, 392 Mass. 704, 712 (1984). The parents' claims of error in the judge's findings and conclusions are, in large part, attacks on her credibility assessments and her weighing of the evidence. These conclusions, however, are entitled to substantial deference, Adoption of Peggy, 436 Mass. 690, 702, cert. denied sub nom. S.T. v. Massachusetts Dep't of Social Servs., 537 U.S. 1020 (2002), and the judge was in a "superior position to evaluate witness credibility." Adoption of Cadence, 81 Mass. App. Ct. 162, 166 (2012). Having carefully reviewed the record in this case, we see no reason to disturb her view of the evidence. Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).
Decrees affirmed.

The mother's rights were also terminated as to her two older children, Sarah and Amy (pseudonyms). On appeal, she challenges the termination of her parental rights as to Marco only.

Marco's father is not the father of Sarah and Amy. Our use of "father" in this memorandum and order refers only to Marco's father. The fathers of Sarah and Amy are not involved in this appeal.

Marco's birth certificate states that he was born in January, 2013. The judge found that he was born in April, 2013. Nothing turns on this discrepancy.

Sarah asked to meet with the director of the department's area office in order to express her fear that Marco would be abused if he returned home.

The mother was also present for some of the beatings, but did not intervene or seek medical assistance for the girls.

The girls asked why the father was not in jail, and Amy expressed fear about the father's contact with the mother and Marco.

The father was indicted on charges of trafficking persons under eighteen for forced services, assault and battery by means of a dangerous weapon on a child under fourteen, assault and battery on a child causing bodily injury, reckless endangerment of a child, and assault and battery. The mother was indicted on charges of assault and battery by means of a dangerous weapon on a child under fourteen, assault and battery on a child causing bodily injury, and reckless endangerment of a child.