After an eight-day trial, a Juvenile Court judge concluded Lourdes was a child in need of care and protection and her father[3] was unfit to parent her. A decree entered terminating the father's parental rights. The judge did not order postadoption visitation, determining that contact with the father was not in Lourdes's best interests. Postadoption visitation was "left to the informed decision making of Lourdes's adoptive parent(s)." On appeal, the father does not challenge the finding of unfitness or the decree terminating his parental rights, but claims the judge abused his "discretion by failing to order any post-adoptive visits." We affirm.
Background. We summarize the relevant facts, which have ample support in the record. Lourdes was born in September of 2016. Lourdes's mother disclosed to hospital staff that she had used alcohol and heroin during pregnancy. Because Lourdes was born substance exposed, hospital staff filed a G. L. c. 119, § 51A, report with the Department of Children and Families (department) alleging neglect. During the two and one-half weeks that Lourdes was in her mother's care, they stayed with Lourdes's maternal grandparents, in a shelter, and with the father at Lourdes's paternal grandmother's residence. The department conducted an investigation and, after Lourdes's mother failed to enter any of the residential treatment centers recommended by the department, the child was removed from her mother's care.
The department placed Lourdes in a foster home in October of 2016. The following May, Lourdes's mother died of an apparent overdose while staying with the father at the paternal grandmother's home. In December of 2017, Lourdes was placed with her maternal grandparents, where she has stayed for the remainder of these proceedings. Lourdes has shown affection for and developed a strong bond with her maternal grandparents, who are her intended adoptive parents.
The department created a service plan for the father. The plan required that he refrain from alcohol and drug consumption, engage in an outpatient treatment program for his substance abuse, verify his sobriety, complete a psychological evaluation, sign various releases, and cooperate with the department's visitation plan. Except for the visitation plan, the father was noncompliant. The judge discredited much of the father's testimony that he had begun, but not finished, other parts of the plan.
The father admitted abusing drugs in the past, but denied having mental health or substance abuse problems. He often exhibited erratic and aggressive behavior toward department employees. The father has a lengthy criminal history, has been the subject of two restraining orders, and has caused the police to be called to his mother's home on several occasions. More recently, the father was found unconscious in a Starbucks restroom and was administered Narcan. He was committed by his brother for in-patient substance abuse treatment.
The father missed or was late for many weekly visits with Lourdes. When he did attend, he was frequently accompanied by unapproved guests and was abrasive. The father often left the visitation room for breaks, some lasting as long as fifteen minutes. He arrived at one visit smelling of alcohol, and at another he berated a social worker in front of Lourdes in a manner that caused her to cry. When the location for visitation was changed to a department office closer to Lourdes's maternal grandparents, the father stopped attending.
Discussion. The purpose of postadoption visitation "is not to strengthen the bonds between the child and h[er] biological mother or father, but to assist the child as [s]he negotiates ... the tortuous path from one family to another." Adoption of Vito, 431 Mass. 550, 564-565 (2000). A judge has broad discretion over whether to order visitation. See Adoption of Ilona, 459 Mass. 53, 63 (2011). The decision whether to order postadoption visitation follows a two-step analysis. The judge first determines whether there is a significant bond between the child and parent that warrants preservation. Id. If there is such a bond, the judge then considers whether postadoption visitation may be left to the adoptive family without harm to the child's interest in maintaining a relationship with the biological parent. Id. at 64 (adoptive parents presumed to act in child's best interests). "The judge may properly decline to order visitation when the adoptive parent's discretion to make decisions regarding contact will adequately serve the child's best interests." Adoption of Cadence, 81 Mass. App. Ct. 162, 168 (2012).
Here, the evidence did not support a conclusion that the father and Lourdes had a significant bond. The father has had limited interaction with Lourdes since her birth. Lourdes has never lived with her father for any significant period of time, and his visitation with Lourdes since she was removed has been inconsistent. Indeed, by the end of the trial his visits had ceased altogether. See id. at 169 (no strong bond where father had limited contact with child). When the father did visit Lourdes, he was inattentive. He spent an inordinate amount of time out of the room, talking to the department's social worker, or relying on his mother to care for Lourdes. Meanwhile, Lourdes has thrived in her preadoptive home. See Adoption of Vito, 431 Mass. at 563-564 (postadoption contact not required where there is evidence of strong bond with preadoptive family and no bond with biological parent).
Although we do not doubt the father's affection for Lourdes, the record reveals little evidence of a significant bond with her. Accordingly, we discern no abuse of discretion in the judge's order that the extent of the father's postadoption contact with Lourdes is best left to her adoptive parents. See Adoption of Ilona, 459 Mass. at 64.
Decree affirmed.

Lourdes's mother was also a party to the G. L. c. 119, § 24, petition. However, she passed away before the case proceeded to trial.