NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1336

ADOPTION OF PASCAL (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and the father appeal from decrees of the Juvenile Court finding the mother and the father unfit to parent their children, Pascal and Carlos, and terminating their parental rights.  On appeal, both parents challenge these determinations.  The father also argues that the judge erred in not granting him posttermination and postadoption visitation with the children.  We affirm.

Background.  We recount the relevant facts from the judge's findings, reserving certain details for later discussion.  Pascal and Carlos were born in October 2020 and October 2021, respectively.  Both children were born substance exposed, testing positive for tetrahydrocannabinol (THC); Pascal was also

_____

[1] Adoption of Carlos.  The children's names are pseudonyms.

born substance exposed to fentanyl.  The children have resided continuously or almost continuously in their respective preadoptive homes since their removals at birth.

The mother and the father have significant criminal histories and both have been minimally involved in their children's lives.  The parents have also been largely unavailable to the children, and they have not engaged in any meaningful services as requested by the Department of Children and Families (department).  Lastly, the mother has failed to treat her mental health conditions and has failed to address her substance misuse.

The trial took place over five nonconsecutive days between March 2023 and May 2023.  The mother appeared for the first two and one-half days of the trial via Zoom.  The father did not appear for any of the five days of trial.

Discussion.  1.  Unfitness and termination of parental rights.  "To terminate parental rights to a child, the judge must find, by clear and convincing evidence, that the parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'"  Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).  "While a decision of unfitness must be supported by clear and convincing evidence, . . . a judge's findings will be disturbed only if they are clearly

erroneous." Adoption of Paula, 420 Mass. 716, 729 (1995). Whether termination of parental rights is in a child's best interest is a discretionary decision. See Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). Accordingly, we review the judge's determination of Pascal's and Carlos's best interests for abuse of discretion or clear error of law. See Adoption of Hugo, supra.

In determining parental fitness, the judge may consider the parents' involvement, or lack thereof, in the children's lives, the parents' ability to provide a stable and structured home environment, and the parents' compliance with the department's action plans. See Adoption of Nancy, 443 Mass. 512, 515-517 (2005); Adoption of Mario, 43 Mass. App. Ct. 767, 770-772 (1997); Adoption of Gwendolyn, 29 Mass. App. Ct. 130, 136 (1990). Here, the parents have had limited involvement in the children's lives since their births and have failed to provide a stable and structured home environment for the children.

Moreover, the parents have failed to comply with much of their respective 2022 department action plans. The similar plans required both the mother and father to, as among other tasks, "complete an assessment with the social worker to determine the families' needs," "demonstrate an understanding of the effects of substance abuse on parenting," "engage in

3

individual counseling," "take all medications as prescribed," and "communicate with the children's doctors[.]"  Although the mother and the father completed some tasks, both parents failed to cooperate in any substantial way with the services offered by the department.  Specifically, the judge concluded that "[n]either parent has . . . engag[ed] in any services to improve their parenting abilities[.]"  See Adoption of Uday, 91 Mass. App. Ct. 51, 54 (2017); Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997) (department's duty "to use reasonable efforts to preserve the biological ties . . . was contingent upon the mother's fulfillment of her own parental responsibilities").

The mother has a criminal history that includes assault and battery, and breaking and entering.  Additionally, at the time the judge issued his findings of fact and rulings of law, she had pending charges of assault and battery by means of a dangerous weapon, vandalizing property, and violations of an abuse prevention order and a harassment prevention order.  For these charges, the mother has failed to appear in court and remains in warrant status.  In May 2022, the mother moved to Florida and was living in Florida at the time of trial.  The trial judge found that the mother "remains in Florida to continue to purposely evade her open criminal warrants" and, therefore, "has willfully chosen to not return to Massachusetts and has left her children in state care."  The mother has not

4

seen Pascal or Carlos in person since April of 2022, and, from May 2022 through March 2023, she missed approximately half of her virtual visits.[2]

The mother has been diagnosed with anxiety, depression, and bipolar disorder. However, she denies being diagnosed with any mental health conditions and does not feel that she needs to take any medication. As a result, the mother has not been taking her prescribed medications since June 2022. "Mental disorder is relevant only to the extent that it affects the parents' capacity to assume parental responsibility, and ability to deal with a child's special needs." Adoption of Luc, 484 Mass. at 146, quoting Adoption of Frederick, 405 Mass. 1, 9 (1989). The failure of the parent to recognize the need for or to engage in treatment is "relevant to the determination of unfitness" (citation omitted). Adoption of Luc, supra at 147.

At trial, the mother "displayed erratic and combative behavior"; she shouted and used profanities. The judge found that the mother's testimony and behavior was "indicative of the severity of [her] untreated mental health conditions and inability to control her anger and combative behaviors."

In short, given these findings, we discern no abuse of discretion or clear error in the judge's determinations that the

_____

[2] Between May 2022 and March 2023, the mother had "[l]ess than five" virtual visits with her children.

5

mother was currently unfit, that her fitness was likely to continue in the future, and that termination of her parental rights was in the children's best interests.

The father also has a criminal history. He was convicted of breaking and entering a vehicle with intent to commit a felony, use of a motor vehicle without authority, and violation of a harassment prevention order; at the time of trial, he also had pending charges of assault and battery by means of a dangerous weapon, and violations of an abuse prevention order and a harassment prevention order. The father was incarcerated from February 2022 through April 2022. Between 2020 and 2021, the father attended twenty-eight visits with the children. Since February 2022, however, the father attended only three virtual visits with the children and one in-person visit with Carlos. The father did not see the children at all in 2023. The father's criminal history interfered with his ability to parent the children because of his unavailability, and, in addition, he failed to pursue an active relationship with the children even when at liberty. See Adoption of Serge, 52 Mass. App. Ct. 1, 8-9 (2001) (parent's physical unavailability due to incarceration, and failures to maintain relationship with child and to offer realistic plan for assuming full-time care of child all supported determinations that parent was currently unfit and likely to remain so for immediate future).

6

The father was engaged in therapy before February 2022, but "has not engaged in services in the last year[.]"  The father attended a parenting class, but the judge found no evidence that the father learned anything from that class.  Finally, the father never completed an assessment with a social worker.  The father's failure to comply with his action plan was appropriately considered by the judge.  See Adoption of Uday, 91 Mass. App. Ct. at 54.

Based on these findings, we discern no error or abuse of discretion in the judge's determinations that the father, like the mother, was unfit to parent Pascal or Carlos and that his unfitness was not likely to be temporary.[3]

2.  Posttermination and postadoption visitation with the father.  The power to order posttermination and postadoption contact rests within the discretion of the trial judge.  See Adoption of Rico, 453 Mass. 749, 753-754 (2009).  We review a judge's decision not to order visitation with a parent whose rights have been terminated for abuse of discretion.  See

_____

[3] The mother and the father challenge several of the judge's factual findings as clearly erroneous, and the mother faults the judge for his "[flagrant] failure to face all facts here."  We disagree with these contentions.  The record supports the judge's findings and the mother's and the father's arguments are mere dissatisfaction with the judge's weighing of the evidence and credibility determinations.  See Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).

Adoption of Xarissa, 99 Mass. App. Ct. 610, 623-624 (2021).

Before issuing an order of visitation between a child and a parent in cases where, as here, a preadoptive family has been identified, a judge must find both "that visitation would be in the child's best interests and that those interests will not be adequately served by the adoptive parent's discretion." Adoption of Cadence, 81 Mass. App. Ct. 162, 168 (2012).  The judge must weigh any "intrusion that an order imposes on the rights of the adoptive parents, who are entitled to the presumption that they will act in their child's best interest" against "the benefit to the child of an order of visitation that will provide assurance that the child will be able to maintain contact with a biological parent."  Adoption of Ilona, 459 Mass. at 64-65.  An order of postadoption contact is more likely in circumstances where the primary "parent-child relationship in the child's life remains with the biological parent" and a preadoptive family has not fully assumed that role.  Adoption of Vito, 431 Mass. 550, 563-564 (2000).

The father argues that it was an abuse of discretion for the trial judge to decline him any visitation.  He stresses that the visits with his children have been positive and he "provided the children with a connection to their Puerto Rican heritage."[4]

_____

[4] The father did not raise the issue of his heritage at trial, nor was any evidence presented regarding his heritage.

8

Pascal has remained in the department's custody since his removal at birth, while Carlos has been in the department's custody since he was three months old.  The father has never been a primary caregiver and has been "minimally involved in his children's lives."  As the judge concluded, the father has not "made visiting with his children a priority."  Both children, moreover, have their needs met on a consistent basis in their preadoptive homes.  Thus, the judge acted well within his discretion in not ordering any visitation.

Conclusion.  Based on the evidence, the trial judge did not err in finding that the mother and the father were unfit to parent the children, and that termination of their parental rights was in the best interests of Pascal and Carlos.  Nor did the judge abuse his discretion in not ordering any visitation for the father.

Decrees affirmed.

By the Court (Blake,
Ditkoff & D'Angelo, JJ.[5]),

Paul Little

Clerk

Entered:  October 22, 2024.

We accordingly need not address this argument on appeal.  See Adoption of Ursa, 103 Mass. App. Ct. 558, 570 (2023) ("Because these claims were not raised at trial, they are waived").

[5] The panelists are listed in order of seniority.