CARE AND PROTECTION OF YETTA.[1]

No. 12-P-1540.

Middlesex. April 10, 2013. - January 16, 2014.

Present: TRAINOR, GRAHAM, & WOLOHOJIAN, JJ.

*Parent and Child,* Care and protection of minor, Custody of minor. *Minor,* Care and protection, Custody. *Practice, Civil,* Care and protection proceeding, Findings by judge.

Discussion of the standard of review applicable to a decision on a petition for the care and protection of a child. [695-696]
At a care and protection proceeding, the judge's findings were insufficient to support a conclusion of parental unfitness, where the parents' lax supervision of their children was confined to several isolated incidents that failed to demonstrate the parents' inability to provide minimally acceptable care, and where the finding that one child's unsupported allegations of sexual abuse by the father were the result of a dysfunctional family was in conflict with other findings. [696-698]

PETITION filed in the Middlesex County Division of the Juvenile Court Department on January 12, 2010.

The case was heard by *Kenneth J. King,* J.

*David J. Cohen,* Committee for Public Counsel Services, for the father.

*Diana S. Spanos* for the mother.

*Jocelyn Thomsen* for the children.

*Brian R. Pariser* for Department of Children and Families.

GRAHAM, J. The Department of Children and Families (department) filed a petition under G. L. c. 119, § 24, alleging that five children, Eve, Yetta, Sam, Deborah, and Ted, were in need of care and protection. The petition was based on the testimony

---

[1] A pseudonym, as are all the children's names in this opinion.

of the eldest child, Eve, that she had been sexually abused by her stepfather (father).[2]

After an eight-day trial in the Juvenile Court, the judge found that the department had failed to prove that the father had sexually abused any of the children but concluded, nonetheless, that the children were in need of care and protection. Pursuant to G. L. c. 119, § 26, the judge committed Eve to the custody of the department,[3] but permitted the other four children (children) to remain in the custody of the parents, subject to certain enumerated conditions.[4]

On appeal, the father, mother, and children (all except for Eve, who has not sought to appeal the final judgment or participate in the proceedings in this court) argue that the evidence and the judge's subsidiary findings do not adequately support a finding of parental unfitness; that the judge exceeded his authority by imposing conditions on the parents' custody of the children without an explicit finding that the parents were unfit; and that certain findings made by the judge are clearly erroneous.

We agree that the findings are insufficient to support a conclusion that the parents are unfit, and accordingly, we vacate the judgment and order concerning the four youngest children.

*Background.* The mother is the biological parent of six children: Gail (born in 1990, who was an adult at the time the petition was filed); Eve (born in 1996); Yetta (born in 2000); Sam (born in 2004); Deborah (born in 2006); and Ted (born in 2010). The father is the biological parent of Sam, Deborah, and Ted, and is the legal father of Yetta. The mother and father were married in June of 2001.

The family first came to the attention of the department in

[2]Eve's allegations of sexual abuse were supported by her older sister Gail, who was an adult at the time of trial. Gail claimed that she too had been sexually assaulted by the father. Upon the filing of the petition, the department sought and was awarded custody of Eve.

[3]The parents did not seek custody of Eve.

[4]Among eighteen conditions set out by the judge were the following: family counselling; that the mother "arrange to work during the daytime and to be home in the evening and overnight as soon as practical"; that the father re-enroll in anger management classes or begin individual counselling; that the parents successfully complete a parenting class; that the father continue working with his psychiatrist; and that the parents "install a lock on the inside of Yetta's door so that she may control access to her room."

May, 2000, as a result of an anonymous G. L. c. 119, § 51A, report (§ 51A report) alleging that the mother sold and used drugs in the presence of her children. After investigation, the department did not support the report. Between January, 2003, and May, 2009, three additional reports were filed alleging neglect of Gail, Eve, or Yetta, but they as well were not supported by the department.

On December 31, 2009, the department commenced an investigation following a § 51A report of sexual abuse of Eve by the father that led to the instant proceedings. The previous day, the mother gave Eve permission to spend the night at a friend's home. When Eve did not call or return home the following day, the mother, father, and children went to Eve's friend's home to retrieve Eve. No one responded when they rang the doorbell and knocked on the door and windows. Ultimately police were called to the scene by the homeowner. When a Somerville police officer arrived at the scene, Eve told him that she had been repeatedly raped by her father. The police convinced the parents to agree that Eve should spend the night at the home of a friend,[5] and then the officer filed a § 51A report. The department ultimately supported the report.

Yetta was placed in the custody of the family of a school friend following a temporary custody hearing. She remained there until July, 2010, when she was placed in the care of the department. The department later placed her in foster care, where she remained through the conclusion of the trial.

On September 12, 2011, a trial on the petition for care and protection of the children commenced. The main contested issue at trial was whether Yetta's older stepsisters, Gail and Eve, had been sexually abused by the father and, if so, whether Yetta was at risk of sexual abuse in the future.

At a hearing on December 21, 2011, the judge issued an order of judgment in which he concluded that the children were in need of care and protection.[6] On January 30, 2012, the judge issued findings of fact, rulings of law, and a superseding

_____

[5]On January 1, 2010, with the mother's consent, Eve went to the home of her godmother, and remained there until the underlying care and protection petition was filed on January 12, 2010. Eve was later placed in the temporary custody of the department.

[6]At the December 21, 2011, hearing, the judge stated, unequivocally, that

order for judgment.[7] However, the findings of fact issued by the judge following the trial were ambivalent on the key issue whether the father had sexually abused Gail or Eve. Consequently, this court remanded the case for further findings on the issue.

In his supplemental findings of fact, the judge determined that "[t]he credible evidence does not support a finding by a fair preponderance of the evidence that [the father] sexually abused Eve [or Gail]. Based on [their] testimony, considered in light of the credible evidence and the Court's observations of [their] demeanor as [they] testified, the Court does not credit [their] testimony of past sexual abuse." The judge noted that the basis for his finding that the children were in need of care and protection, "distinct from sexual abuse," was the allegations of sexual abuse by the two children the father helped raise, the father's loud angry tone, and the parents' failure to adequately supervise the children on multiple occasions.

In addition, the judge expressed his concern that Yetta's two-year absence from the family would require a period of adjustment for all family members. The additional services, he concluded, would help the family "to gain insights into the needs of the children; to learn how to work with the professionals

Eve and Gail had been sexually abused by the father. He said, "I think what has been proven here is an indecent assault and battery. . . . I have concluded that it's more likely than not that there was some inappropriate conduct and contact between [the father], Eve, and Gail." However, in his January 30, 2012, findings of fact, the judge reversed course and found that the allegations of abuse by Eve and Gail were not credible. We note the cautionary warning by the Supreme Judicial Court in *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979), quoting from *United States* v. *Forness*, 125 F.2d 928, 942 (2d Cir.), cert. denied sub nom. *Salamanca* v. *United States*, 316 U.S. 694 (1942) that "[o]ften a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper."

[7]The judge's "findings" were spread over seventy-five single-spaced pages. We note that a finding of fact "is the judge's declaration that it is a fact. . . . Findings of fact are drawn from, and consistent with, the evidence and are not merely a recitation of the evidence. . . . Findings of fact are factual deductions from the evidence, essential to the judgment in the case. Such findings should be stated clearly, concisely and unequivocally, and be worded so that they are not susceptible of more than one interpretation." *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 339 (2007) (quotations and citations omitted).

who are involved in the children's lives; and . . . to reintegrate Yetta into the family."[8]

*Discussion.* a. *Standard of review.* The law has firmly established that parents enjoy a "fundamental liberty interest in . . . the care, custody, and management of their children," an interest that does not simply end when they become something less than ideal caretakers. *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982). *Adoption of Cadence*, 81 Mass. App. Ct. 162, 168 (2012). To find a child in need of care and protection, there must be "an affirmative showing of parental unfitness." *Custody of a Minor (No. 1)*, 377 Mass. 876, 882 (1979). Parental unfitness, in this context, "means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent. Rather, the idea of 'parental unfitness' means 'grievous shortcomings or handicaps' that put the child's welfare 'much at hazard.' " *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28 (1997) (footnotes omitted), quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 646 (1975).

"Generally, no one factor is determinative and the judge should weigh all the evidence." *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 (1987). *Adoption of Quentin*, 424 Mass. 882, 886 (1997) ("[t]aken together, these findings must then prove clearly and convincingly that the parents are currently unfit to provide for the welfare and best interests of their children"). The issue for determining parental unfitness is not "whether the parent is a good one, let alone an ideal one; rather, the inquiry is whether the parent is so bad as to place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 761 (1998).

To be clear and convincing, the "evidence must be sufficient to convey 'a high degree of probability' that the proposition is

---

[8]The judge failed to make an explicit finding that the mother and father were unfit to parent the children. Instead he found that the department had proven by clear and convincing evidence that there was a need for ongoing supervision and oversight and that the children would be at a substantial risk of harm absent conditions.

true. . . . The requisite proof must be strong and positive; it must be 'full, clear and decisive.' " *Adoption of Rhona*, 57 Mass. App. Ct. 479, 488 (2003), quoting from *Adoption of Iris*, 43 Mass. App. Ct. 95, 105 (1997). "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." *Custody of Eleanor*, 414 Mass. 795, 800 (1993), quoting from *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 871 (1975). On review of the judge's decision, "our task is not to decide whether we, presented with the same facts, would have made the same decision, but to determine whether the trial judge abused his discretion or committed a clear error of law." *Adoption of Hugo*, 428 Mass. 219, 225 (1998).

b. *Determination of parental unfitness*. The relevant portions of the statute, G. L. c. 119, § 26(*b*), relied upon by the judge and governing care and protection proceedings, are:

> "If the court finds the allegations in the petition proved within the meaning of this chapter, it may adjudge that the child is in need of care and protection. In making such adjudication, the health and safety of the child shall be of paramount concern. If the child is adjudged to be in need of care and protection, the court may commit the child to the custody of the department until he becomes an adult or until, in the opinion of the department, the object of his commitment has been accomplished, whichever occurs first; and the court shall consider the provisions of section 29C and shall make the written certification and determinations required by said section 29C. The court also may make any other appropriate order, including conditions and limitations, about the care and custody of the child as may be in the child's best interest including, but not limited to, any 1 or more of the following:

> "(1) It may permit the child to remain with a parent, guardian or other custodian, and may require supervision as directed by the court for the care and protection of the child.

> "(2) It may transfer temporary or permanent legal custody to:

"(i) any person, including the child's parent, who, after study by a probation officer or other person or agency designated by the court, is found by the court to be qualified to give care to the child."

On the record before us, we are not persuaded that the parental shortcomings needed to establish parental unfitness are present. The judge did find that the father's voice, tone, and demeanor are a problem for some people, but found there was no evidence that the children were afraid of him. The judge concluded that "it is likely that the children are used to the volume and tone of [the father's] voice and that they do not perceive anger or a threat."[9] Although one might speculate that the father's demeanor might interfere with his ability to meet the children's future needs, we are mindful that, when assessing parental fitness, a trial judge must focus on the present circumstances of parent and child. See *Adoption of Paula*, 420 Mass. 716, 730-731 (1995). The judge recognized that, generally, the parent's efforts, while lacking in many respects, did meet the current needs of the children.

Similarly, the parents' general laxity of supervision of the children during supervised visits between Yetta and the family are insufficient to prove that the parents failed to provide minimally acceptable care. The judge found that the parents demonstrated a pattern of negligent supervision of the children. Specifically, he found that on one occasion the parents left knives out and unattended, within reach of the children. On other occasions, Sam, who was two years old at the time, was found chasing his sisters with barbeque tools, the children were allowed to water a plant on the roof unsupervised, and once the children caused the bathtub to overflow, sending water down the stairs. In addition, the judge found that Ted, a toddler, had climbed on top of a full-size refrigerator, and had suffered a bruise after falling off a treadmill, and Deborah, then four years old, found her way to a stairwell without supervision.

---

[9]The judge noted that "the differing perceptions [between the children and a social worker who was concerned about the father's tone] may well be based on different life experiences. Fundamentally, if one was raised in a library, a busy schoolroom could seem cacophonous."

Here, the evidence concerning the parents' lax supervision, though troubling, was confined to several incidents that did not result in any serious harm to the children. Without resorting to impermissible conjecture, these isolated incidents fail to demonstrate the parents' inability to provide minimally acceptable care.

Finally, the judge's finding that Eve's allegations of sexual abuse by the father were the result of a "dysfunctional" family is in conflict with other findings. For instance, the judge found that "Eve feels neglected by [the mother] and wants more attention from her. . . . It also appears that Eve makes these allegations when she is otherwise in trouble at home. . . . That is, the allegations were made when Eve had an incentive to shift attention away from herself." Therefore, the findings do not support the conclusion that the undefined "dysfunction"[10] in the family puts the children's welfare "much at hazard." *Adoption of Greta*, 431 Mass. 577, 587 (2000) (citation omitted).

In sum, "[a]lthough far from indicators of parental excellence, those [aforementioned] facts fall short of the 'grievous shortcomings or handicaps [placing] the child[ren]'s welfare much at hazard,' which must be shown by clear and convincing evidence in order to support the 'grave conclusion' of parental unfitness." *Adoption of Zoltan*, 71 Mass. App. Ct. 185, 189 (2008) (citation omitted). Without more, the record here does not reflect the "grievous shortcomings" that must underlie a finding of parental unfitness.[11]

> *Judgment reversed as to the four*
> *youngest children.*

---

[10]In his finding, the judge noted that "[t]he family dynamics that brought this family into contact with the Court remains largely un-illuminated."

[11]We need not undertake consideration of the record support for each of the findings because we conclude that, taken as a whole, the judge's subsidiary findings, even if supported by the evidence, do not support his ultimate conclusion that the mother and father are unfit to parent the children. See *Adoption of Yale*, 65 Mass. App. Ct. 236, 240 (2005).