NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-82                                           Appeals Court

ADOPTION OF XARINA.[1]


No. 18-P-82.

Barnstable.      July 9, 2018. - August 22, 2018.

Present:  Blake, Sacks, & Ditkoff, JJ.


Adoption, Care and protection, Dispensing with parent's consent.
     Minor, Care and protection, Adoption. Parent and Child,
     Care and protection of minor, Adoption, Dispensing with
     parent's consent to adoption. Practice, Civil, Care and
     protection proceeding, Adoption.



     Petition filed in the Barnstable County/Town of Plymouth
Division of the Juvenile Court Department on November 4, 2014.

     The case was heard by James J. Torney, Jr., J.


     Michael S. Penta for the mother.
     Richard A. Salcedo for Department of Children and Families.
     Kerri Zeldis for the child.
     Rizwanul Huda for the father.


     BLAKE, J.  Following a trial in the Juvenile Court, a judge

found the mother unfit to parent her daughter Xarina, terminated

her parental rights, and approved the plan of the Department of

_____

     [1] A pseudonym, as are all names in this opinion.

Children and Families (department).  On appeal, the mother argues that in the circumstances of this case, it was error for the judge to terminate her parental rights when the father's rights were not terminated.[2]  She also claims it was error for the judge to approve the plan proposed by the department.  We affirm.

1.  Background.  Xarina was born in September, 2006.  The mother and the father divorced in 2009.  Following the divorce, the mother had legal and physical custody of Xarina.  When Xarina was approximately two years old, a report pursuant to G. L. c. 119, § 51A (51A report), was filed against the mother alleging neglect of the child.  Thereafter, the father was awarded sole legal and physical custody of Xarina.

The father married his current wife, Susan, in 2011, and they have two children together.  The department investigated numerous allegations against the family, including that the father had physically abused Adam, Susan's son from a prior relationship.  In October, 2014, the department received a 51A report after school staff noticed bruises on Adam.  As part of its investigation, the department's social workers spoke with Xarina, who, after some resistance, reported that she saw her father hitting Adam and pushing him to the ground.  She also

_____

[2] As discussed infra, the only issues before us pertain to the mother's rights and not to the decision of the department to withdraw its request to terminate the father's parental rights.

said that she did not want to get anyone into trouble and that the father told her that if she spoke to the department, she would be taken away. She stated that she did not feel safe in the home and thought someone would "kill her." In November, 2014, the department filed a petition pursuant to G. L. c. 119, § 24, alleging that Xarina was in need of care and protection. She was removed from the father's home and placed in the custody of the department that same day.[3]

A court investigation report filed in February, 2015, stated that the department had little to no contact with the mother, and her whereabouts were often unknown. None of the mother's five children is in her custody. She has a history of homelessness, substance use, domestic violence, and untreated mental health issues.

By February, 2016, the mother had failed to meet with the department about Xarina and had failed to complete any of the tasks in her service plan. She failed to attend many of the Juvenile Court proceedings. By contrast, the father was cooperating with the department and stipulated in February, 2016, that he was currently unfit to care for Xarina. In March, 2016, the judge determined that the mother was unfit to parent Xarina and awarded the department permanent custody of the

---

[3] The other children were also removed from the home at this time.

child. Neither the mother's nor the father's parental rights were terminated at that time.

In November, 2016, the department changed its goal for Xarina from reunification to adoption and sought to terminate the mother's and the father's parental rights. In April, 2017, on the day of trial, the department reported to the judge that after a lengthy discussion, the department had decided not to seek termination of the father's parental rights. The department proceeded against the mother. The mother, who was represented by counsel, did not attend the trial. Two department social workers testified. The adoption social worker testified that the plan for adoption that the department had filed with the court would be changed to a plan with a goal of guardianship following a department permanency planning conference.[4] See G. L. c. 119, § 29B. The judge found that the mother was unfit and that it was in Xarina's best interests to terminate the mother's parental rights, and he approved the department's plan. This appeal followed.

2. Discussion. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence,

---

[4] The proposed guardians were the same couple with whom Xarina had been residing and who had been identified as the preadoptive family.

that the parent is unfit to care for the child and that termination is in the child's best interests."  Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).  In determining whether the best interests of a child are served by termination of parental rights, the judge "shall consider the ability, capacity, and readiness of the child's parents . . . to assume parental responsibility" (emphasis omitted).  Adoption of Elena, 446 Mass. 24, 31 (2006), quoting from G. L. c. 210, § 3(c).  "Where there is evidence that a parent's unfitness is not temporary, the judge may properly determine that the child's welfare would be best served by ending all legal relations between parent and child."  Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012).  "Unless shown to be clearly erroneous, we do not disturb the judge's findings, which are entitled to substantial deference."  Adoption of Jacques, supra at 606-607.

a.  The mother's unfitness.  The mother argues that it was error for the judge to terminate her parental rights, because her actions did not trigger the filing of the care and protection petition, and that termination was not necessary where the permanency goal for Xarina changed from adoption to guardianship.  She argues that the department sought termination of her parental rights to "punish her" for failing to visit with Xarina, and that the department's decision to leave the father's parental rights intact supports this argument.

Notably, the mother does not contend that the judge's finding that she is unfit is error.  She concedes that she has not completed any of the tasks in her service plan, that she has visited Xarina only once during the pendency of the proceedings, and that she is not in a position to take custody of the child.  Although "[u]nfitness does not mandate a decree of termination," Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008), and termination is not a prerequisite for guardianship, it is unfair to leave a child in limbo indefinitely.  See Adoption of Nancy, 443 Mass. 512, 517-518 (2005).  Indeed, as is the case here, termination is in the best interests of a child when it would bring some measure of stability to the child's life.  Absent termination, the mother would have the right "to receive notice of or to consent to any legal proceeding affecting the custody, guardianship, adoption or other disposition of the child" (emphasis supplied).  G. L. c. 210, § 3(b).  See Adoption of Willow, 433 Mass. 636, 647 n.11 (2001).  As such, even though the goal for Xarina had changed from adoption to guardianship, termination of the mother's rights "significantly eases the [child's] path to a stable placement." Id. at 647.  Once the mother's rights are terminated, "transition[] to [a] permanent home[] will be expedited" for the child, whether it be adoption or guardianship.  Id. at 648.

The mother's claim that the department sought termination of her parental rights in order to punish her, because the department did not also seek to terminate the father's parental rights, also fails. As the mother acknowledged in her brief, it is well established that a judge may terminate the parental rights of one parent while keeping intact the parental rights of the other. See id. at 644. As the mother and father have not had a relationship for many years and do not constitute a single family for purposes of G. L. c. 119, § 1, see Adoption of Willow, supra, whether the father is unfit or whether his parental rights were also terminated were not material considerations in adjudicating the mother's parental rights. The department's decision not to seek to terminate the father's rights finds support in the lengthy period of time during which Xarina lived with him, his partial compliance with his service plan tasks, his consistent visits with Xarina, and his bond with her.

The judge's decision to sever the legal ties between the mother and Xarina was based on his determination that the mother was unlikely to work with the department to resolve her mental health issues, to address her substance use, and to improve her parenting skills. See Adoption of Nancy, 443 Mass. at 516. Indeed, the judge made detailed findings, amply supported by the record, that the mother's failure to visit Xarina, engage in any

services, and work with the department or notify them of her whereabouts demonstrated "ongoing serious parental neglect of [the child]."  He also properly considered the requisite factors under G. L. c. 210, § 3(c), and found that factors (i), (ii), (iii), (iv), (vi), (vii), (viii), (ix), (x), (xii), and (xiv) were applicable.  Moreover, the judge explicitly assessed the mother's capacity to parent "within the context of [the child's] particular needs," and determined that the mother "lacks the capacity to meet [the child's] specialized needs."  There was no error.

b.  The department's plan.  The mother next argues that it was error for the judge to approve the department's plan for guardianship of Xarina, as there was no rationale to explain why the department changed the goal from adoption to guardianship and why it served Xarina's best interests.  In considering the issue of parental unfitness, "the judge must consider the [guardianship] plan proposed by [the department] before terminating parental rights."  Adoption of Dora, 52 Mass. App. Ct. 472, 474 (2001).  "[T]he judge is required to consider and meaningfully evaluate plans put forward by the department and by the parents."  Adoption of Cadence, 81 Mass. App. Ct. at 170. The department's plan need not be "fully developed," Adoption of Paula, 420 Mass. 716, 722 n.7 (1995), but it must lend itself to substantive consideration.  See Adoption of Willow, 433 Mass. at

652-653 ("The adoption plan need not be fully developed to support a termination order; it need only provide sufficient information about the prospective adoptive placement so that the judge may properly evaluate the suitability of the department's proposal" [quotation omitted]).

Here, the mother did not set forth her own plan for Xarina, and she was not required to do so. However, she does not challenge Xarina's placement with the current foster parents. Instead, the mother's only contention is that the judge did not adequately find that guardianship was in Xarina's best interests.

Although it would have been better practice for the department to offer evidence to explain why the goal was changed from adoption to guardianship, this is not fatal. The controlling consideration is the welfare of the child. See Adoption of Cadence, 81 Mass. App Ct. at 171. The judge's finding that continued placement with the foster family is in Xarina's best interests is amply supported by the record.[5] She has been living with this family since November, 2014, and has thrived there. Her weight and hygiene have improved, she completes daily tasks without much prompting, and she is progressing academically. Xarina also sees herself in this home

---

[5] This family was also identified as an adoption resource and a guardianship placement.

as she gets older.  The current foster parents are both employed, have a suitable home, and have a strong commitment to and bond with Xarina.  Ultimately, the judge found that Xarina had made "tremendous strides" in her foster home.

The department is not required to retry a parent's unfitness in the event the proposed plan for a child changes.  Adoption of Nancy, 443 Mass. at 517.  Indeed, G. L. c. 119, § 29B, provides multiple options for permanency plans for children and does not expressly require the department to choose one exclusively.  Adoption of Nancy, supra at 517 ("The statute . . . provides a greater range of permanent placement options for children than simply limiting placement to adoption . . .").  In reviewing a trial judge's consideration of a plan, we will not disturb the decision absent an abuse of discretion or clear error of law.  See Care & Protection of Yetta, 84 Mass. App. Ct. 691, 696 (2014).  Here, there was none.

Decree affirmed.