The mother and father appeal from decrees terminating their parental rights, as well as the posttermination visitation order. We remand for clarification regarding the termination of parental rights and the visitation order.
1. Sufficiency of the evidence regarding the father's unfitness.[2] The father argues that struggling with opiates and violating the law are not sufficient evidence of unfitness.
A decision to terminate parental rights calls for a two-step analysis. See G. L. c. 210, § 3 ; Adoption of Nancy, 443 Mass. 512, 515 (2005). First, the judge must find, by clear and convincing evidence, that the parent is unfit. Id. Second, the judge must determine whether the termination of parental rights serves the best interests of the children. Id. When determining unfitness, "no one factor is determinative and the judge should weigh all the evidence." Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 290 (1987). The judge "must analyze the parent's character, temperament, capacity and conduct in relation to the particular child's needs, age, affections and environment." Adoption of Carlos, 413 Mass. 339, 348 (1992). The judge's findings must be left undisturbed unless they are "clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
Although the father argues that his addiction does not negatively impact the children (born in 2009 and 2012), the evidence in this case established that the father's drug use was one of several factors that made him unable to provide for them. The judge found that the father failed to "participate in therapy, parenting classes, [or] the father group, [and] did not obtain a safe and appropriate home for the children." Despite his opiate addiction, the father failed to consistently participate in treatment and often failed to provide drug screens. See Adoption of Lisette, 93 Mass. App. Ct. 284, 295 (2018). Contrary to the father's argument, the judge addressed the fact that the father enrolled in a suboxone-supported opiate addiction treatment program. The judge found, however, that despite testing positive for only suboxone for several weeks, the father also tested positive for opiates, benzodiazepine, and oxycodone between May, 2014, and November, 2015, while enrolled in the addiction treatment program.
The judge also determined that the father's drug use has contributed to his criminal record. Though not conclusive, a parent's criminal record bears on his fitness and may properly be considered. Care & Protection of Frank, 409 Mass. 492, 494-495 (1991). The father's record also contains numerous offenses for operating with a suspended license. The judge properly determined that the father's numerous offenses for driving with a suspended license poses a risk to the children. Although the father argues that this offense does not endanger the children, the judge found that the father "was subject to arrest and jail for his actions." Therefore, there is clear and convincing evidence that the father is unfit to parent the children.
2. Termination of parental rights and posttermination visits. Both parents challenge the termination of their parental rights. "After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." Adoption of Nancy, 443 Mass. at 515. "Because the termination of parental rights is an 'extreme step,' ... the judge [must] articulate specific and detailed findings in support of a conclusion that termination is appropriate, demonstrating that she has given the evidence close attention." Id. at 514-515, quoting Adoption of Frederick, 405 Mass. 1, 5 (1989). We conclude that a remand is required in order to clarify the judge's termination determinations.
The judge specifically terminated the parental rights of the mother and father and dispensed with the need for their consent to adoption under G. L. c. 210, § 3. The judge also found that "[b]oth [the Department of Children and Families (DCF) ] and the children (through counsel) support terminating the parents' rights thereby freeing the children to be adopted by their maternal grandmother." When an adoption is approved, termination of parental rights is mandated. See G. L. c. 210, § 6. See also Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, 391 Mass. 113, 119 (1984) ("The allowance of a petition to dispense with a parent's consent to his child's adoption means that the parent no longer has the power to prevent the termination of [the statutory] rights, duties, and other legal consequences of his relation to his child"); Bezio v. Patenaude, 381 Mass. 563, 576 n.9 (1980). In comparison, a guardianship does not require the termination of a parent's rights, though a judge may do so. See Adoption of Xarina, 93 Mass. App. Ct. 800, 803 (2018) ("termination is not a prerequisite for guardianship").
Here, the record shows that the goal for the children at the time of trial was guardianship by the maternal grandmother rather than adoption. The maternal grandmother testified that her "discussions with [DCF] have been to do a guardianship ... so that [she] can financially provide for [the children] until they're 18." The maternal grandmother also testified that her income was "assistance from DCF [and] Social Security Disability."[3] The maternal grandmother's financial situation is relevant because in order "[t]o conclude that adoption by a particular person is in the child[ren]'s best interests, the judge must have evidence that the person is actually willing and able to adopt the child[ren]." Adoption of Cadence, 81 Mass. App. Ct. 162, 173 (2012). The DCF social worker also testified that the plan for the children was guardianship.[4] The judge, however, does not mention guardianship in her findings.
The judge should have determined whether terminating the mother's and father's parental rights was in the best interests of the children given the fact that the goal was for the maternal grandmother to become the children's guardian, rather than their adoptive parent. A judge must "consider the plan proposed by the department" when weighing the best interests of the children. G. L. c. 210, § 3 (c ). Here, the judge failed to meaningfully consider and evaluate that guardianship was the goal for the children. Contrast Adoption of Lars, 46 Mass. App. Ct. 30, 31-32 (1998). The ramifications of a guardianship versus an adoption are different and we cannot conclude, based on the judge's findings, whether she would have terminated the parents' rights in the event of guardianship rather than adoption. See Adoption of Carlos, 413 Mass. at 350 ("In determining whether that extreme step [of terminating parental rights] should be taken, consideration of the future is a necessity").
We conclude that remand is necessary for the judge to clarify the termination of parental rights determinations. Where the posttermination visitation order was based on the maternal grandmother adopting the children, the visitation order also requires reconsideration.[5]
3. Conclusion. The findings of unfitness as to the parents are affirmed. The decrees are vacated, and the case is remanded to the Juvenile Court for further proceedings consistent with this memorandum and order.
So ordered.
Affirmed in part; vacated in part and remanded.

Although argued in her brief, the mother's counsel conceded at oral argument that the mother is not challenging the judge's finding that she is unfit.

At oral argument, the parties agreed that the maternal grandmother would not receive financial assistance from DCF if she adopted the children.

We note that the record does not include a permanency plan, nor does it appear that a permanency plan was before the judge during trial.

Although the children argue on appeal in favor of affirming the decrees, they "acknowledge that if there were a remand to re-evaluate the possibility of a guardianship, ... the visitation order may also need refining."