NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1360

ADOPTION OF YONG.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, the judge issued a decree finding the father unfit to parent his son, Yong, terminated the father's parental rights, and approved the adoption plan proposed by the Department of Children and Families (department).  See G. L. c. 210, § 3.  The judge declined to order posttermination and postadoption visitation.  The father and Yong appeal.[2]  The father claims that the evidence of his unfitness was insufficient to support termination of his parental rights.  Both the father and Yong claim that the judge abused his discretion by approving the department's adoption plan and declining to order posttermination and postadoption visitation.  We affirm.

---

[1] A pseudonym.

[2] The mother stipulated to the termination of her parental rights and is not a party to this appeal.

Background.  In June 2021, the department assumed emergency custody of Yong and his sisters[3] after receiving a report filed pursuant to G. L. c. 119, § 51A, alleging neglect by the mother due to mental health and substance misuse issues.[4]  The father was incarcerated at the time Yong was removed from the mother's care.  Yong was placed first with his maternal aunt, then in a specialized foster home.

The trial occurred on June 27, 2023, at which the father did not appear; Yong was almost fifteen years old at the time. Ultimately the judge found that the father was "unable to provide [Yong] with permanency currently and would be unable to do so in the foreseeable future," and found it in Yong's best interests to terminate the father's parental rights pursuant to G. L. c. 119, § 26.  The judge "considered the father's ability, fitness, and readiness to assume parental responsibility, as well as the fourteen (14) factors set forth at G. L. c. 210, § 3 (c)."  This appeal followed.

Discussion.  1.  Termination of parental rights.  The father challenges the sufficiency of the evidence supporting the

---

[3] Yong's two sisters are not parties to or the subjects of this appeal.

[4] The mother called police to report someone breaking into her apartment through a secret tunnel; on arrival, police found no intruders but found the mother to be in possession of "crack."  She was hospitalized pursuant to G. L. c. 123, § 12.

termination of his parental rights and the judge's conclusions of law regarding the statutory factors of parental unfitness. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). The judge "must also find that the current parental unfitness is not a temporary condition." Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018). On appeal, "[w]e give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).

a. Sufficiency of the evidence. The father claims that the evidence of his unfitness was not supported by clear and convincing evidence. We are not persuaded. "Because the termination of parental rights is an 'extreme step,' we require that the judge articulate specific and detailed findings in support of a conclusion that termination is appropriate, demonstrating that []he has given the evidence close attention." Adoption of Nancy, 443 Mass. 512, 514-515 (2005), quoting

Adoption of Frederick, 405 Mass. 1, 5 (1989).  Here, the judge made specific factual findings supporting his conclusion that termination was appropriate, and considered a "constellation of factors" that demonstrated the father's unfitness.  Adoption of Greta, 431 Mass. 577, 588 (2000).

i.  Mental health history and substance misuse.  The father had an extensive history of mental health issues and substance misuse.  He reported diagnoses of depression, posttraumatic stress disorder, and multiple personality disorders.  He had been prescribed medications, took them inconsistently, and been hospitalized for suicidal ideations.  The department made three referrals for mental health supports, but the father engaged sporadically in only one and it was discontinued due to lack of attendance.  The father's failure to recognize his need for treatment or engage consistently in treatment was relevant to the determination of unfitness.  See Adoption of Luc, 484 Mass. 139, 146-147 (2020).  See also Adoption of Frederick, 405 Mass. at 9 (mental disorder relevant to extent it affects parent's capacity to assume parental responsibility).

The judge also properly considered the father's misuse of alcohol and illegal substances as a factor in unfitness.[5]  See

---

[5] The father had a history of using marijuana (although now legal) and continued to struggle with misuse of other illegal substances.  He admitted that he had used cocaine, drank

Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008) (evidence of alcohol or drug abuse "relevant to a parent's willingness, competence, and availability to provide care").  Although the father claimed that he had stopped using substances, he later admitted to using again.  The department referred the father for a substance abuse evaluation, but the father did not follow up.

 ii.  Criminal history.  The father contends that the judge relied disproportionately on his criminal history, especially as most of his convictions were over a decade old.  A parent's criminal history alone is not sufficient to terminate parental rights; however, "[t]o the extent it bears on fitness, . . . evidence of prior convictions may properly be weighed in the balance."  Care & Protection of Frank, 409 Mass. 492, 495 (1991).  Evidence of a criminal record in relation to the father's fitness was "germane" for the judge to consider.  Care & Protection of Quinn, 54 Mass. App. Ct. 117, 125 (2002).  The judge did not err in considering the father's criminal history[6] as a factor in parental unfitness.

_____

alcohol, smoked cigarettes and crack, and injected substances into his neck with a needle.

 [6] The father had been charged with crimes involving property, robbery, alcohol, drugs, and crimes of violence.  At the time of trial, the father had an open warrant for breaking and entering.

iii.  <u>Domestic violence</u>.  The judge also properly
considered the "extensive history of domestic violence"[7] between
the mother and the father, noting the "detrimental impacts on
children" of witnessing this kind of violence.  See <u>Custody of
Vaughn</u>, 422 Mass. 590, 595 (1996) ("a child who has been either
the victim or the spectator of such abuse suffers a distinctly
grievous kind of harm"); <u>Adoption of Zak</u>, 87 Mass. App. Ct. 540,
543 (2015).

iv.  <u>Housing instability</u>.  The father's inconsistent
housing and inability to provide a stable environment for Yong
contributed to his unfitness.  A judge may consider a parent's
"inability to secure 'adequate stable housing'" in determining
fitness.  <u>Adoption of Anton</u>, 72 Mass. App. Ct. at 676, quoting
<u>Adoption of Vito</u>, 431 Mass. 550, 555 (2000).  Unstable housing
may have a "deleterious effect" on a child, <u>Adoption of Anton</u>,
<u>supra</u>, and a parent's inability to provide a stable home is an
appropriate factor in determining fitness.  See <u>Care &
Protection of Three Minors</u>, 392 Mass. 704, 713 n.11 (1984).
Around the time of trial, the father was reportedly living in a
tent in New Hampshire.  He had not had reliable housing
throughout the pendency of this case and had been staying at

_____

[7] There were ten incidents of domestic violence between
September 2014 and September 2022, some of which resulted in
charges against the father.  And there were three orders issued
pursuant to G. L. c. 209A against the father.

friends' homes and in tents.  The judge found that, even if granted custody, the father had no home to which he could bring Yong.

v.  Engagement with the department.  "Evidence of parents' refusal to cooperate with the department, including failure to maintain service plans and refusal of counseling programs, is relevant to the determination of unfitness."  Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005).  The judge found that the father did not engage with the department on his family action plan, and this lack of engagement "prevented him from making observable changes throughout the pendency of this case and from making sufficient progress towards the goal of reunification." [RA126]  The record supports these findings.  The department's action plan with the father included regular communication with the department, engaging in therapy, completing various evaluations, taking medications as prescribed, providing proof of sobriety, maintaining stable housing, refraining from illegal and illicit activities, and refraining from altercations with the mother.  The father did not engage in any of the services to which he was referred by the department and did not take responsibility for the circumstances leading to Yong's removal; "rather, he blame[d] Mother and the Department."  See Adoption of Xarina, 93 Mass. App. Ct. 800, 803-804 (2018) (parent's

unfitness supported by findings of continued failure to engage in services and work with department).

b. <u>Negative inference against the father</u>. The judge did not err in drawing a negative inference from the father's failure to appear and testify at trial. A negative inference was permissible where the father failed to testify in a trial so adverse to his interests that his failure to testify "would be a fair subject of comment"; i.e., termination of his parental rights. <u>Custody of Two Minors</u>, 396 Mass. 610, 616 (1986). See <u>Adoption of Talik</u>, 92 Mass. App. Ct. 367, 372-373 (2017). While "the adverse inference drawn from the failure of a party to testify is not sufficient, by itself, to meet an opponent's burden of proof," <u>Custody of Two Minors</u>, <u>supra</u>, the department met its burden of proof with ample evidence of the father's unfitness, aside from the father's failure to testify.

c. <u>Conclusions of law</u>. The father also contends that the judge did not issue separate conclusions of law or evaluate the fourteen statutory factors set forth in G. L. c. 210, § 3 (<u>c</u>). "Although it would be better practice specifically to state the reasons that termination is in the child's best interest, such specificity is not required. The judge had discretion to conclude that termination was appropriate." <u>Adoption of Nancy</u>, 443 Mass. at 516. As described <u>supra</u>, the findings of fact laid out a myriad of reasons for the father's parental unfitness,

many of which corresponded to the statutory factors.  And as in Adoption of Larry, 434 Mass. 456, 470 (2001), the judge "specifically stated that he considered each [of the factors]. He made specific findings as to the . . . factors that he determined were applicable, and said nothing of the others. That is all that was required of him."[8]

2.  Adoption plan.  The father and Yong contend that the judge abused his discretion in approving the department's plan for adoption through recruitment.  We review for abuse of discretion.  See Adoption of Hugo, 428 Mass. 219, 225-226 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).  "The adoption plan need not be fully developed to support a termination order; it need only provide sufficient information about the prospective adoptive placement 'so that the judge may properly evaluate the suitability of the department's proposal.'"  Adoption of Willow, 433 Mass. 636, 652-653 (2001), quoting Adoption of Vito, 431 Mass. at 568 n.28. Here, the department had been searching for a kinship placement and planned to recruit a preadoptive resource if a kinship

---

[8] We acknowledge that the judge's comment that the decree was "going to issue in five minutes" could cast doubt on the quality of his review of the thousands of pages of exhibits entered in evidence.  However, the testimonial evidence presented at trial alone was sufficient to support termination of the father's parental rights, and the record supports the judge's determination.  See Adoption of Ilona, 459 Mass. at 59.

placement could not be located. The adoption plan described Yong's preferences to be placed with "someone he already knows," remain in the same geographical area, have "others close to his age in his foster home," continue to participate in programs like the Boys and Girls Club, and continue contact with his biological family. This was "sufficiently detailed to permit the judge to evaluate the type of adoptive parents and home environment proposed and consider whether the proposal is best suited to meet the specific needs of the child." Adoption of Varik, 95 Mass. App. Ct. 762, 770-771 (2019).

The father and Yong further contend that it was error for the judge to "rush" to terminate the father's rights where adoption was unlikely due to Yong's opposition to adoption. See G. L. c. 210, § 2 (child's consent required for adoption if older than twelve years old). Yong's views about adoption were unclear and equivocal. For example, he "expressed not wanting to be adopted but not wanting to return to his parents' care." But Yong also "report[ed] that if he cannot go home, he [was] open to adoption." The judge considered Yong's wishes but did not give them determinative weight, and he was not required to. See Care & Protection of Georgette, 439 Mass. 28, 36 (2003). In any case, consent to adoption is not a prerequisite to termination. See Adoption of Nancy, 443 Mass. at 518. See also G. L. c. 210, § 3 (b) (department authorized to commence

termination proceeding "independent of a petition for adoption"). The evidence demonstrated the father's unfitness and was supported by the record; it was within the judge's discretion to determine that it was in Yong's best interest to approve the adoption plan and terminate the father's parental rights. See Adoption of Ilona, 459 Mass. at 59.

3. Posttermination and postadoption visitation. The father and Yong claim it was error for the judge to decline to order posttermination and postadoption visitation. Specifically, the father contends that it was an error of law for the judge to state that leaving the visitation determination to the department was "about as far as [he could] go." "The decision whether to grant posttermination visitation is within the judge's sound discretion." Adoption of Cecily, 83 Mass. App. Ct. 719, 727-728 (2012). However, "[a]n order for posttermination visitation is unwarranted without adequate findings by the judge that a significant bond exists between the biological parent and the child and that continued contact would be in the child's best interests." Id. at 728, citing Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). The father had supervised visitation with Yong and his younger sister biweekly for two hours. At the time of trial, the father had not attended visitation for one month, and he had been approximately one hour late to visits for several months. The judge properly

found that there was not a significant bond between the father and Yong based on the father's inconsistent visitation.  We discern no abuse of discretion.  See Adoption of Ilona, 459 Mass. at 64-66.

Decree affirmed.

By the Court (Blake, C.J., Neyman & Grant, JJ.[9]),

Clerk

Entered:  December 11, 2024.

---

[9] The panelists are listed in order of seniority.