NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-43

ADOPTION OF AMANDA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On October 29, 2024, following a trial, a judge of the Juvenile Court issued a decree adjudicating Amanda (Amanda or child) in need of care and protection, and terminating the parental rights of the mother.[2]  Amanda was born in September 2022 and has been in the care of the maternal grandmother since April 2023.  On appeal, the mother argues that numerous factual findings made by the judge were clearly erroneous, the remaining findings do not prove the mother's indefinite parental unfitness by clear and convincing evidence, and the judge engaged in invalid viewpoint discrimination in her findings.  We affirm.

---

[1] A pseudonym.

[2] The judge also found the father unfit and terminated his parental rights.  The father did not appeal and is not a party before this court.

1. Factual findings. As a preliminary matter, the mother challenges approximately fifty of the judge's factual findings. She contends that the findings violate general evidentiary rules for custody hearings or are simply unsupported by the evidence. For most of these factual findings, we find no merit to the mother's arguments. For those with which we agree with the mother, any error was not prejudicial, and as discussed further, we do not disturb the final decree.

Subsidiary factual findings must be proved by a fair preponderance of the evidence, and we give substantial deference to the judge's findings. Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). We review the judge's subsidiary findings to determine whether they were clearly erroneous. Custody of Eleanor, 414 Mass. 795, 802 (1993). "A finding is clearly erroneous where there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id. at 799, quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).

a. Findings related to the father's conduct. The mother challenges several factual findings and conclusions of law as

they relate to the father's unfitness.[3]  As the father is not a party to this appeal, we decline to address the claims of error concerning the father's behavior, most of which are irrelevant to the adverse unfitness finding against the mother.  See Adoption of Paula, 420 Mass. 716, 723 n.8 (1995).  Were we to reach the propriety of these findings, we would discern no prejudicial error to the mother.

b.  Findings derived from G. L. c. 119, § 51A reports.  The mother also challenges numerous factual findings that derive from information in several G. L. c. 119, § 51A reports (51A reports), arguing that the judge used the reports impermissibly as substantive evidence.[4]  The mother did not file a motion for reconsideration regarding these findings, nor did she file a motion for amended findings of fact.  Assuming without deciding that this issue is not waived, we find no merit to the mother's arguments.

---

[3] The judge's decision misnumbers the findings of fact after finding number 227.  We have used the actual numbers in this decision.  The challenged findings about the father's conduct include findings numbers 79, 98, 102, 108, 211, 212, 213, 235, and 255.

[4] Included in that category are findings numbers 21, 74, 76, 77, 95, 98, 102, 106, 107, 110, 111, 114, 117, 118, 119, 126, 127, and 128.  The mother also purports to challenge factual finding number 101 on this basis, but this finding was based on a G. L. c. 119, § 51B report, not a 51A report.

3

Section "51A reports are admissible to 'set the stage' to explain how the department became involved with the family." Adoption of Querida, 94 Mass. App. Ct. 771, 778 (2019). See Mass. G. Evid. § 1115(b)(2)(A) (2025). Judges are entitled to reference the 51A reports in their findings as long as they do not use the information contained in the reports as substantive evidence. See Adoption of Querida, supra.

Here, upon admitting the 51A reports in evidence, the judge expressly noted at a hearing on November 7, 2023, that these reports were admitted only to set the stage and "with some limitations." Furthermore, in each finding of fact that the mother challenges, the judge used variations of the word "allege," demonstrating that she was not taking the information in the reports as substantive, but merely setting the stage for how the Department of Children and Families (department) became involved with the mother. See Adoption of Querida, 94 Mass. App. Ct. at 778 ("[E]ach time the judge referenced the 51A reports, he did so using the words 'alleged' or 'allegations,' making clear that he was not using any information contained in the 51A reports" improperly). Furthermore, even if there was error with these eighteen factual findings, which we do not find, there was ample support for the judge's finding of unfitness, under the clear and convincing standard based on the

4

other 269 factual findings in the record, and thus no prejudice to the mother.  See Adoption of Luc, 484 Mass. 139, 148 (2020).

c.  Findings derived from G. L. c. 119, § 51B reports.  The mother also claims that several findings of fact deriving from hearsay in G. L. c. 119, § 51B reports (51B reports) and not falling within a common-law or statutory exception are clearly erroneous.[5]  While we agree with the mother that several of these findings were impermissible based on the evidentiary rules applicable to 51B reports, none of those findings were important to the determination of unfitness, and thus, there was no prejudice.  See Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003).

Section 51B reports may be considered for statements of primary fact, Custody of Michel, 28 Mass. App. Ct. 260, 267 (1990), if the hearsay source is specifically identified and is available for cross-examination.  See Mass. G. Evid.

---

[5] Included in that category are findings numbers 3, 38, 49, 52, 100, 124, and 130.  Findings numbers 3 and 100 are not clearly erroneous.  Finding number 3 was not error where the judge's finding, that mother had a "troubled adolescence," was supported elsewhere in the record.  The mother's challenge to finding number 100 on evidentiary grounds is also without merit, where the hearsay declarant, the maternal grandmother, was identifiable, available for cross-examination should mother have subpoenaed her, and the contents included the grandmother's observations of the mother's moving from place to place.  Also, there is no legal significance to the use of the word "allegedly" in factual finding number 100, and as such, the mother's challenge to factual finding number 100 on this ground is also without merit.

§ 1115(b)(2)(B). "Statements of primary fact are observations, rather than opinions, made by an individual with personal knowledge . . . ." Adoption of Luc, 484 Mass. at 153 n.34.

Three of the judge's findings that derive from the 51B reports are opinions, rather than observations, such as "mother appeared to be just waking up," and mother was "rude and berating." See Adoption of Luc, 484 Mass. at 153 n.34. Furthermore, two of the findings properly identify statements of primary fact, yet fail to include the full name of the hearsay declarant, and as such, the declarant is not identifiable within the meaning of § 1115(b)(2)(B). See Adoption of Luc, supra at 153 & n.35.

To the extent that these findings are erroneous, they were not prejudicial to the mother, as they were cumulative evidence, Adoption of Luc, 484 Mass. at 148 & n.21, and, where the judge's decision does not suggest that she relied on these specific findings in her determination of the mother's unfitness, the findings were "not central to the ultimate conclusion of unfitness." Care & Protection of Olga, 57 Mass. App. Ct. at 825. Moreover, numerous other findings, which the mother does not challenge, stand for the same proposition that these challenged findings stood for: the mother has a violent temper, and the mother struggles with substance use.

6

d.  Findings derived from police reports.  The mother also challenges four findings that derive from information in police reports.  These challenges are meritless.[6]

Police reports are admissible under the business record exception to the hearsay rule, to the extent that the reports include the officers' firsthand observations.  See Adoption of Paula, 420 Mass. at 727; Mass. G. Evid. § 1115(b)(5).  Opinions and evaluations within the police reports are not admissible, unless they separately satisfy another hearsay exception.  See Mass. G. Evid. § 1115(b)(5).  At the November 7, 2023 hearing, the judge properly stated these evidentiary limitations when admitting the police reports.

With regard to the two findings challenged that reference specific allegations of child abuse and threatening behavior that were reported to the police, these findings do not assert that the contentions in the police reports are taken for their truth.  Furthermore, no conclusion of law suggests that these specific allegations were taken for their truth, nor does the mother cite to any of the judge's conclusions that take those allegations for their truth.

The two other findings challenged relate specifically to reports police received of the mother's suicidal ideations.

---

[6] Included in that category are findings numbers 170, 202, 209, and 215.

7

These findings do not violate any evidentiary rules, where finding number 215 does not invoke any hearsay statements, and in finding number 170, the judge does not rely on opinions or evaluations of officers, but rather independently concludes that the mother has expressed suicidal ideation based on the police officers' observations.

e. Remaining challenges. The mother's remaining challenges to other factual findings generally allege that the findings are simply unsupported by the record.[7] For nearly all of the challenges, there is ample information in the record to support the judge's findings by a preponderance of the evidence. Where the mother's arguments "amount to no more than dissatisfaction with the judge's weighing of the evidence and [her] credibility determinations," we will not disturb the judge's findings. Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).[8]

---

[7] Included in that category are findings numbers 48, 62, 75, 100, 125, 134, 138, 150, 176, 181, 286, 287, and 288. These findings relate to, among other topics, domestic violence, substance abuse, housing instability, and abandonment of relationship with the child.

[8] The mother's argument regarding finding number 93 has merit. Finding number 93 stated that the mother and the father were causing a disturbance, but per the police report, the mother and the father had observed the disturbance, not caused it. However, for the reasons mentioned, this finding was not prejudicial where there was abundant other evidence in the record to support the finding of the mother's unfitness. See Adoption of Luc, 484 Mass. at 148.

8

2. The mother's unfitness. The mother also claims that the nonerroneous factual findings do not support the judge's determination of her unfitness by clear and convincing evidence. Specifically, she alleges that the judge failed to draw a nexus between the mother's shortcomings and her inability to meet the child's needs; and that there is no evidence that the mother's substance use, criminal conduct, personal instability, housing instability, abandonment of relationship with the child, or mental illness, as found by the judge, would make the mother unable to meet the child's needs; and that the finding of unfitness was a result of bias against the mother. We are not persuaded.

We review to assess whether the judge's findings proved unfitness by clear and convincing evidence. Custody of Eleanor, 414 Mass. at 802. The judge must find that current unfitness is not temporary. Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Talik, 92 Mass. App. Ct. 367, 370 (2017), quoting Adoption of Mary, 414 Mass. 705, 711 (1993). Other proper considerations in this determination include, but are not limited to, the past behavior of the parent, see Adoption of Jacques, 82 Mass. App.

9

Ct. at 607, criminal conduct, see Care & Protection of Frank, 409 Mass. 492, 494-495 (1991), failure to complete and benefit from services, Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019), and inability to secure adequate stable housing, Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). No single factor is determinative. Care & Protection of Yetta, 84 Mass. App. Ct. 691, 695 (2014). Lastly, "the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." Custody of Eleanor, 414 Mass. at 799.

We conclude that the judge's finding of the mother's unfitness was supported by clear and convincing evidence. The judge's 287 findings of fact and fifty conclusions of law demonstrate that the judge "[gave] the evidence close attention." Adoption of Nancy, 443 Mass. 512, 515 (2005). The judge also considered the findings of fact together, in the aggregate, when making her determination of unfitness. See Care & Protection of Laura, 414 Mass. 788, 793 (1993). Among those findings was evidence of consistent housing instability, supported by the parents' own testimony, the mother's difficulties in coping with depression, the mother's abandonment of her relationship with the child in the months leading up to the trial, the mother's lack of ability to support the child's specialized needs related to her heart condition, the mother's

violence and temper, the mother's continued substance use and its negative impact on her child, and lastly, the mother's general criminal conduct. Importantly, the mother refuses to engage in action plans or to take any steps to alleviate these issues. See Adoption of Jacques, 82 Mass. App. Ct. at 609. All of these factors were properly considered for their likelihood of harm to the child. We do not disturb the judge's finding of unfitness, where she was in the best position to weigh the evidence and assess the credibility of the witnesses. See Adoption of Quentin, 424 Mass. at 886 n.3.

The evidence also supported the finding that the mother's unfitness is not temporary and would likely continue indefinitely. "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, 459 Mass. 53, 60 (2011). By the time the termination of parental rights trial began in November 2023, the department had been involved with mother since at least 2007. Over the years, the concerns of the department continued due in large part to the mother's resistance to comply with the required action plan tasks. At trial, the mother refused to take responsibility for losing custody of any of her children, denied almost every allegation against her regardless of the evidence suggesting otherwise, continually emphasized her belief that the action

11

plans were not relevant to her, and stated that she refused to participate in virtual visits with her child.  Where there is evidence that unfitness is not temporary, we do not substitute our judgment for that of the judge who heard the evidence.

The mother's claim that the judge based her decision on domestic violence between the mother and the father, the mother's substance use, and her general criminality, without citing a nexus to how those factors hinder the mother from meeting the child's basic needs, is without merit.  To the contrary, the judge explicitly explained the nexus between these factors and the mother's inability to meet her child's needs.  Regarding the judge's conclusions related to domestic violence, the judge explicitly found that "any child in [the mother's] care would be exposed to . . . violence, domestic and otherwise," and as a result, "it would be dangerous for [the child] to reunify with" the mother, particularly because the mother refuses to engage in domestic violence services.  With regard to substance use, the judge, again, explicitly found that the mother has prior patterns of substance use, that she refuses to engage in substance use evaluations and treatment, and that "there is a nexus between [the m]other's . . . unevaluated and untreated conditions and [her] ability to parent her children." The record supports these findings.  Regarding the mother's criminal history, the judge made several findings, most of which

12

the mother does not challenge, relevant to the mother's criminal and police history. The judge determined that this criminal activity bears on parental fitness, and here contributes to putting "the child's welfare in jeopardy."

With reference to the mother's arguments that the finding of unfitness was a result of bias against the mother, we disagree. The mother bases her argument on the unfortunate reality that the mother does not have custody of any of her six children, suggesting that this reality is a result of the department's bias against her. But the judge's determination of unfitness for this child did not hinge on the mother's lack of custody over her other children. The judge's determination of unfitness properly focused on the mother's conduct in relation to this child.[9]

---

[9] The mother also purports to directly challenge numerous conclusions of law. Those conclusions of law include conclusions numbers 7, 9, 11, 18, 23, 29, 30, 33, 41 (i), 41 (ii), 41 (iii), 41 (v), 41 (ix), 41 (x), 44, 48, and 50. The mother's arguments are without merit. The mother's challenges to several conclusions simply reiterate the legal principles the judge was obligated to follow. The mother's other challenges mostly amount to a dispute with the judge over the weight given to the evidence. Adoption of Quentin, 424 Mass. at 886 n.3. Lastly, the mother's challenge to conclusion number 30 is without merit where her contention that there was a requirement of expert testimony for the judge to find psychological harm to the child if she were removed from her foster placement is mistaken. See Adoption of Daniel, 58 Mass. App. Ct. 195, 203 (2003).

3.  Viewpoint discrimination.  The mother claims, for the first time on appeal, that the judge engaged in invalid viewpoint discrimination in her findings of unfitness and in the termination of the mother's parental rights.  We treat this claim as waived.

It is well established that an argument may not be raised for the first time on appeal.  Boss v. Leverett, 484 Mass. 553, 562-563 (2020).  Here, the mother did not raise this claim in the Juvenile Court, and therefore, we treat it as waived.  Also, "[w]e generally decline 'to consider constitutional issues for the first time on appeal,'" Commonwealth v. Guzman, 469 Mass. 492, 500 (2014), quoting Beeler v. Downey, 387 Mass. 609, 613 n.4 (1982), especially where "the record accompanying [constitutional claims] is lacking."  Guzman, supra, quoting Gagnon, petitioner, 416 Mass. 775, 780 (1994).

Even if this claim were not waived, it is without merit.  The judge did not base her decision on the mother's viewpoints regarding the department and the police.  Rather, the judge properly determined that the mother's conduct, including her inability to exhibit consistent temperament and stability, her threatening behavior, failure to follow service plans, housing instability, substance misuse, and more, all supported a finding of unfitness, and a determination that the termination of the mother's parental rights was in the child's best interests.

14

These considerations were all relevant to the decision to terminate parental rights and permissible for the judge to consider.  Adoption of Yvonne, 99 Mass. App. Ct. 574, 580-581 (2021) (threatening behavior, unstable housing, and past pattern of behavior properly considered); Adoption of Ulrich, 94 Mass. App. Ct. 668, 676-677 (2019) (violence of temper and inability to comply with or benefit from service plan properly considered); Adoption of Querida, 94 Mass. App. Ct. 771, 778-779

(2019) (history of involvement with department properly considered).

Decree affirmed.

By the Court (Meade,
  Ditkoff & Toone, JJ.[10]),

Clerk

Entered:  December 17, 2025.

---

[10] The panelists are listed in order of seniority.